[Crim. No. 2056. Fifth Dist. Sept. 24, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL CAMPOS VERA, Defendant and Appellant.

**COUNSEL**

George Bumanglag, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William G. Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GARGANO, J.**—During the early morning hours of February 7, 1974, an intruder broke into the Yettem Learning Center, a school for trainable mentally retarded children in Tulare County, and, among other things, removed a typewriter, an adding machine, a camera, a record player and a toaster. Then, the intruder set fire to the building; he went into the shop area, placed some paper upon the floor and, after removing several one-gallon cans of paint thinner from a shelf, poured the liquid over the paper and around the floor and ignited a fire.

Later, the police found a film-strip viewer, a "Joe Namath" popcorn popper and a deep-fat fryer, all belonging to the school, on the floor just inside the front door of the center. Latent fingerprints were discovered on the bottom of the fryer and on a side of the fryer near the bottom; the latent fingerprints were lifted by Sergeant Hensley of the Tulare County Sheriff's office and were placed upon a card. The police also found fresh tire marks outside of the center near one of the exterior walls.

On March 7, 1974, an information was filed in the Superior Court of Tulare County charging appellant with the burning of a public building in violation of section 448a of the Penal Code; in a second count, appellant was charged with burglary in the second degree in violation of section 459 of the Penal Code. Thereafter, appellant entered pleas of not guilty to both charges, and the case was set for jury trial.

At the trial, Sergeant Hensley testified that the latent fingerprints found on the bottom of the deep-fat fryer were made by appellant's right ring finger and his right index finger; he said that the latent fingerprints

on the side near the bottom were made by appellant's right thumb. In addition, it was established that appellant never had been in the Yettem Center prior to the night of the crime, and that seven months earlier he was involved in the burglary and attempted arson of another school in Tulare County. It also was established that the tire tracks found outside the center belonged to an automobile owned by Richard Zayes, and that on the night of the fire appellant was at a party at Zayes' residence and that during the party someone borrowed Zayes' automobile without his permission.

At the conclusion of the trial, the jury returned verdicts finding appellant guilty on both counts. Appellant has appealed, challenging the fingerprint evidence; prior to trial, appellant made a common law motion to suppress the evidence of the *results* of the comparisons made between a known set of his fingerprints and the latent fingerprints found on the deep-fat fryer; the motion was denied. Appellant also preserved his objection to this fingerprint evidence at the commencement of the trial.

Appellant complains because Sergeant Hensley, who lifted the latent fingerprints from the deep-fat fryer, admitted that he made no attempt to preserve the latent fingerprints in place or to photograph the appliance while the latent fingerprints still were on it; the sergeant also admitted that it is possible to lift latent fingerprints more than once if they are found on a shiny, smooth-surfaced object, like the exterior of the deep-fat fryer, and that they can be preserved in place if they are covered with transparent cellophane tape. Appellant also complains because the police did not seize the fryer and place it in an evidence locker; the appliance was lost when a salvage company cleaned up the center. He suggests that the police omissions amounted to a willful, though nonmalicious, destruction of evidence and that under the rationale of *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], the *results* of the fingerprint comparisons should have been suppressed.

In *Hitch,* the California Supreme Court was concerned with the *results* of a breathalyzer test in a case where the test ampoule and the reference ampoule had not been preserved. The court stated:

". . . we hold that, where, as here, such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investiga-

tive officials, sanctions shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the government agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the test ampoule and its contents and the reference ampoule used in such chemical test. The prosecution shall bear the burden of demonstrating that such duty to preserve the ampoules and their contents has been fulfilled. If the prosecution meets its burden and makes the required showing, then the *results* of the breathalyzer test shall be admissible in evidence, even though the ampoules and their contents have been lost. If the prosecution fails to meets its burden then the court shall apply sanctions for nondisclosure. Finally we hold that in such latter event due process shall not require a dismissal of the action but shall require merely that the *results* of the breathalyzer test be excluded from evidence. [fns. omitted.]" (*Supra,* 12 Cal.3d at pp. 652-653.)

In reply, the Attorney General argues that the in-place preservation of latent fingerprints and the production of the article on which the incriminating fingerprint evidence is discovered are not necessary so long as the procedures actually employed by the person who lifted the latent fingerprints and made the comparisons ". . . are sufficient to verify the accuracy of the evidence sought to be admitted." Stated in another manner, the Attorney General asserts in substance that the *Hitch* holding does not apply to objects on which latent fingerprints are found because once a latent fingerprint has been lifted and placed upon a card, its authenticity always can be retested.

A latent fingerprint is the imprint of the ridges found upon the inner surface of the last joint of a finger or thumb which has been left upon the surface of an object by the moisture discharged through the pores of the skin; once the imprint has been developed, lifted and preserved, it is an exact image of what was on the object and is readily available for other experts to examine and compare so that the validity of an expert opinion that the latent fingerprint is that of the accused can be tested. (See Moenssens, Fingerprint Techniques (1971) pp. 27-29, 105, 111, 276-277.) In this sense, the lifted, latent fingerprint is the only evidence which is comparable to the ampoules used in a breathalyzer test and which must be preserved under the *Hitch* rationale.

█ Nevertheless, the place where a latent fingerprint is discovered is an incriminating circumstance; without proof of the place where it is

found, a defendant's latent fingerprint has no evidentiary value. (Cf. Evid. Code, §§ 140, 600, subd. (b); Jefferson, Cal. Evidence Benchbook (1972) Principles of Relevancy, § 19.1, p. 215.) Furthermore, fingerprint evidence can be manufactured; unfortunately, such things have happened.[1] In addition, according to Andre Moenssens, a noted police authority and expert on the subject, latent fingerprints can be forged or planted. For example, in his text, Mr. Moenssens states that by using a "transferring medium" an undeveloped latent fingerprint can be lifted from one place and transferred to another where it is left to be discovered by unsuspecting police authorities. The expert adds that leaving the developed, latent print on the surface of the object on which it is found, or at least preserving the object from which it was lifted, could provide favorable evidence to negate the occurrence of a third person "transfer forgery."[2] (See Moenssens, Fingerprint Techniques (1971) pp. 289-292.)

Admittedly, the *Hitch* court was not concerned with the malicious destruction or the fraudulent manufacture of evidence. As the Attorney General correctly points out, the rule announced in that case embraces only the intentional but nonmalicious failure by police and prosecuting authorities to preserve material evidence which has a reasonable possibility of providing favorable information to the accused on the issue of guilt or innocence. (*People* v. *Hitch, supra,* 12 Cal.3d 641, 649, 652.) In fact, as the high court suggested, when there is proof that evidence was destroyed maliciously or manufactured, dismissal of the prosecution, not mere suppression of evidence, "may well be the proper sanction." (*People* v. *Hitch, supra,* 12 Cal.3d 641, 653, fns. 6 and 7.)

---

[1]As one fingerprint authority explains in his text:

"It is conceded that a fingerprint expert could easily manipulate fingerprint evidence in such a way as to 'frame' an individual for a crime. As a man trained in the field, he could without great difficulty obtain a latent impression from a suspect who has been questioned or arrested, since the very presence of the suspect on police premises would assure that he leaves latent impressions in areas or on objects which the technician could have seen him handle. The technician could then just as easily develop the latent print and lift it, then claim to have found and lifted the latent print at a crime scene. He could back up his claim by leaving the cellophane lift on the surface where he alleges he found it or by placing it on a latent print transfer card with appropriate annotations on the card as to the origin of the latent." (Moenssens, Fingerprint Techniques (1971) pp. 292-293.)

[2]For instance, according to Mr. Moenssens, the transferred fingerprint would appear weak, and the quality of the print would be poor; due to the construction of the fingers, the hand and the arm, it would be impossible or highly improbable to leave fingerprints in certain given positions on the surface of an object; and foreign particles from the "transferring medium" could be transferred to the surface of the object on which the transferred fingerprint had been placed. (See Moenssens, Fingerprint Techniques (1971) pp. 289-291.)

Even so, it is unrealistic to argue that the place where a latent fingerprint is found never can fall within the perimeters of the *Hitch* opinion ". . . so long as the procedures actually employed [in lifting the latent fingerprints and in making comparisons] are sufficient to verify the accuracy of the evidence sought to be admitted." ■ The preservation-of-evidence rule so well articulated by Mr. Justice Sullivan in the *Hitch* opinion, is not a new or startling pronouncement; the rule finds its genesis in earlier federal and state decisions adhering to the fundamental principle that due process requires the prosecution *to disclose* all material evidence favorable to the accused whether such evidence relates directly to the issue of guilt or can lead the defense to favorable evidence. (*Giglio* v. *United States* (1972) 405 U.S. 150, 153-154 [31 L.Ed.2d 104, 108-109, 92 S.Ct. 763, 766]; *United States* v. *Augenblick* (1969) 393 U.S. 348, 355-356 [21 L.Ed.2d 537, 544-545, 89 S.Ct. 528, 533]; *Giles* v. *Maryland* (1967) 386 U.S. 66, 74 [17 L.Ed.2d 737, 744-745, 87 S.Ct. 793, 797]; *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194, 1196-1197]; *Killian* v. *United States* (1961) 368 U.S. 231, 242 [7 L.Ed.2d 256, 264, 82 S.Ct. 302, 308]; *United States* v. *Bryant* (1971) 439 F.2d 642, 647-648 [142 App.D.C. 132]; *Levin* v. *Clark* (1967) 408 F.2d 1209, 1212 [133 App.D.C. 6]; *In re Ferguson* (1971) 5 Cal.3d 525, 533 [96 Cal.Rptr. 594, 487 P.2d 1234]; *Covington* v. *Municipal Court* (1969) 273 Cal.App.2d 470, 476 [78 Cal.Rptr. 563].) As the court explained in *United States* v. *Bryant, supra,* 439 F.2d 642, 651, the duty of disclosure is operative as a duty of preservation because otherwise disclosure might be avoided by destroying vital evidence before the prosecution begins or before the defendant hears of its existence.

In *Bryant* (cited with approval in *People* v. *Hitch, supra,* 12 Cal.3d at pp. 648, 650, 651-652), police authorities destroyed tape recordings of critical conversations allegedly occurring between the defendants and the narcotics agent who allegedly purchased heroin from the defendants. The court pointed out that the credibility of the agent was the key to the conviction and that while he may have testified in the utmost good faith, there was a possibility that he forgot some of the details or could not accurately reconstruct what went on. The court then concluded that if the taped conversations had been preserved, there would have been a reasonable possibility that they would have provided favorable information on the issue of guilt or innocence; the tape recordings might have clarified the context in which certain remarks were made, or corrected other matters of emphasis and degree in the agent's testimony. (*United States* v. *Bryant, supra,* 439 F.2d 642, 645-646, 648.)

Likewise, in the case of fingerprint evidence, there may be circumstances where the photographing or preservation of latent fingerprints in place, or at least the preservation of the object on which they were discovered, would have the possibility of supplying favorable information on the issue of guilt or innocence. For instance, in his text, Mr. Moenssens suggests that there possibly are ways to detect a police "frame" or a third person "transfer forgery" if latent fingerprints are left on the surface of the object on which they are found, or if the object itself is preserved. (See fn. 2, *ante.*)

■■■ However, based upon the record presently before us, we are in no position to hold that a judicial mandate requiring the police, in every case, to preserve or photograph latent fingerprints in place or to preserve the object on which they are found will have the salutary effect of preserving evidence which possibly could have a bearing on the issue of guilt or innocence. First, appellant did not challenge the authenticity of the latent fingerprints in question, nor did he present any evidence relating to police "frames" or proving that latent fingerprints can effectively be forged or planted. Neither did he present any evidence to show that there are ways to detect a police "frame" or a third person "transfer forgery" if the latent fingerprints are left upon the object on which they are found or if the object itself is preserved. Without such evidence we cannot declare that there is a reasonable possibility that the in-place preservation and photographing of latent fingerprints can constitute favorable evidence on the issue of guilt or innocence and that the failure to do so can result in a denial of material evidence. While we have quoted freely from Mr. Moenssens' text, we cannot say that the opinions expressed therein are accepted by the authorities with unanimity.

Second, in *People* v. *Hitch, supra,* 12 Cal.3d 641, 650, the Supreme Court stated that ". . . the prosecution has a duty to undertake *reasonable* efforts to preserve the material evidence, . . ." (Italics added.) Here, there is no evidence in the record as to the nature and extent of the problems that would be faced by law enforcement agencies if latent fingerprints had to be preserved in place. In short, the record before us simply does not present the vehicle needed by this or any other court to answer the fundamental question raised herein.

In summary, on the basis of the record before us, it cannot be said that the failure of the police to preserve or photograph appellant's latent

fingerprints in place or to preserve the object on which they were found deprived appellant of material evidence and impinged upon his right of due process. As we have indicated, no evidence was presented to show how appellant's ·latent fingerprints could have been placed on the deep-fat fryer found at the scene of the crime unless he touched the object. Appellant merely implied that Sergeant Hensley's testimony as to where he found the latent fingerprints was a fabrication, and there is not a scintilla of evidence to support such a serious attack on the witness' credibility. (See *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 573-574, and 574, fn. 10 [128 Cal.Rptr. 641, 547 P.2d 417].) On the contrary, Hensley's testimony as to where he found appellant's latent fingerprints was corroborated by other evidence. Tire marks from an automobile to which appellant had access were found near the school building; also, appellant had broken into another school and attempted to start a fire.

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.