[Crim. No. 35246. Second Dist., Div. Five. Aug. 7, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
NANCY CECELE CHAMBERS et al., Defendants and Appellants.

COUNSEL

Martin W. Staven for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Cynthia S. Waldman and Donald R. Currier, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—In a nonjury trial submitted on the transcript of the preliminary hearing and additional evidence, appellants Nancy Chambers

and Karel Zboril were convicted on two counts of sale, etc., of marijuana (Health & Saf. Code, § 11360, subd. (a)). As to each appellant, probation was granted and count II was dismissed in the interests of justice.

Appellant Chambers, who is the wife of appellant Zboril, worked as a dispatcher for the Monterey Park Police Department. On March 22, 1978, an informant named Toni had two telephone conversations with Chambers which were monitored by Officer Price. The informant indicated she had a boyfriend named Ron (who was actually Undercover Officer Ronald Kunkle) who wanted to purchase marijuana. In the first conversation Chambers said she did not have anything, but a few minutes later she called the informant back, said she and her husband were out of marijuana, but asked if the informant's friend would be interested in purchasing a pound of Colombian for $450. Chambers said this is the price they got it at and that the money would have to be fronted.

That evening Undercover Officer Kunkle had a telephone conversation with Chambers. He asked if she could arrange for the purchase of a pound of marijuana and she said she could. He asked if it was good quality and she said it was, that she had smoked it herself. He asked if she had any available at that time and she said she thought she had a little bit at her house, and that Kunkle could go to her house and introduce himself to her husband and that her husband would possibly supply him with a quantity of marijuana. Kunkle said he did not know Chambers' husband, but she said that was no problem, that she would give Kunkle a note to take to her husband and explain the circumstances.

Kunkle went to the Monterey Park Police Department communications center and met Chambers. She asked if he was Ron and handed him an envelope addressed to her husband and containing a note. She told him to go to her house at 441 South Russel and deliver the note, and her husband would probably supply him with marijuana at that time.

Officer Kunkle went to the house, was greeted by appellant Zboril and handed him the note. Zboril read the note, invited him in, led him to a room in the rear, rolled some marijuana cigarettes, and smoked them with the officer. Zboril asked if Kunkle liked the quality. Kunkle said he did and asked to purchase a pound of it. Zboril said the price

would be $450 and he could possibly arrange the sale for the following day. Zboril said he was going to get an ounce from the pound of marijuana as his consideration for the transaction. Officer Kunkle also stated he wanted something that evening to get high on, and Zboril supplied him with a small quantity of marijuana in a baggie.

The following day, March 23, Kunkle returned to the residence at 3 p.m. Appellant Chambers answered the door and invited him in. Appellant Zboril was smoking a marijuana cigarette. Zboril said his connection had to go to school that evening and that Kunkle should come back the next day.

The next day, March 24, Kunkle returned at 5:45 p.m. with $520 in city funds. Appellant Chambers answered the door and invited him in. Appellant Zboril told him the arrangements had been made, and that they were going to the connection's house to drop off the money. Kunkle drove Zboril to the connection's house and gave Zboril $450. Zboril went inside, and came back in 10 minutes, stating that the delivery would be made to Zboril's house. They returned to Zboril's house, where appellant Chambers and another female were also present. After a few minutes Zboril made a phone call and announced that they were to return to the connection's house to pick up the marijuana. Appellant Chambers suggested that they use her car because "all the cops knew her vehicle and that they wouldn't hassle us."

Zboril and Kunkle returned to the connection's house. Zboril entered the house and returned in 10 minutes with a paper bag containing marijuana. They returned to Zboril's house where Chambers and the other female were still present. Zboril started sifting the marijuana to prepare it for smoking. Officer Kunkle excused himself to go to the bathroom, where he gave a prearranged signal to surveilling officers. Appellants were then arrested.

Appellant Chambers' personal phone book contained an entry, "Ron (Toni's friend) one lb."

## LOSS OF TAPES

Three telephone conversations with appellant Chambers were tape recorded: (1) the informant's call to Chambers; (2) Chambers' return call

to the informant; and (3) Chambers' telephone conversation with Undercover Officer Kunkle on March 22.[1]

These tapes were lost by the police department. They were marked and locked inside Officer Price's desk. However, when he was assigned a different duty in July of 1978, his desk was cleaned out and the tapes were lost. The trial court found the loss of the tapes was neither intentional nor in bad faith.

■ Appellants contend the loss of the tapes deprived them of a fair trial and that the trial court should have granted their motion to dismiss. Under *People* v. *Hitch* (1974) 12 Cal.3d 641, 649-653 [117 Cal. Rptr. 9, 527 P.2d 361], the failure of the police to preserve material evidence calls for sanctions designed to preserve a defendant's right to a fair trial. Where, as here, the loss of evidence was neither intentional nor in bad faith, but merely inadvertent or negligent, dismissal would not be the appropriate sanction, but rather the suppression of testimony concerning the conversations which were taped. (*Id.*, at p. 653; *People* v. *Harris* (1976) 62 Cal.App.3d 859, 863 [133 Cal.Rptr. 352].)

However, the application of even the lesser sanction requires the defense to show the substantial materiality of the lost evidence. (*People* v. *Wright* (1976) 60 Cal.App.3d 6, 15-16 [131 Cal.Rptr. 311]; *People* v. *Ammons* (1980) 103 Cal.App.3d 20, 32-33 [162 Cal.Rptr. 772]; *People* v. *Vera* (1976) 62 Cal.App.3d 293, 300 [132 Cal.Rptr. 817].)

*People* v. *Wright, supra*, 60 Cal.App.3d 6, is squarely in point. There the police officer in good faith erased his tape recordings of interviews with the defendant. The court held the trial court had properly admitted into evidence the officer's testimony of defendant's statements. "Defendant has made no showing that the destroyed tape had any substantial materiality. Such a showing was not beyond his means. His testimonial assertion that he had made statements inconsistent with those attributed to him by the cross-examiner would have supplied a

---

[1]Appellant Zboril seems to assume that other conversations, between him and the officer, were also recorded, but this is not generally supported by the record. Officer Kunkle wore a transmitting device to be monitored by surveilling officers for his protection. According to the investigating officer, Price, the conversations were not recorded, as recording was not the purpose of outfitting Kunkle with a transmitter. Officer Kunkle had no knowledge whether any of his transmissions were recorded. There is reference in an arrest report to a tape of the conversation of March 23, but that conversation is insignificant since it simply involved Zboril's telling the officer to come back the following day.

measure of the erased recording's materiality. He made no such asser-
tion. As revealed by the cross-examination, his exculpatory statements
to Sergeant Kelley were consistent with his courtroom testimony, that
is, a complete denial of guilt and the suggestion of possibilities of acci-
dental injury to the child. He did not deny making the incriminating
statement describing his understanding of the phrase 'Daddy pow.' His
claim of injury through erasure of the tape is an abstraction without ac-
tual bearing on the case." (*Id.*, at p. 16.)

Here appellants made no showing that Chambers' telephone conver-
sations differed in any respect from the officers' testimony of their
content. In the absence of a more substantial showing of materiality, no
sanctions were called for.

PENAL CODE SECTION 995

The evidence produced at trial was quite sufficient to establish appel-
lant Chambers' guilt as an instigator or aider and abettor of the actual
sale of a pound of marijuana on March 24, and Chambers does not con-
tend otherwise. (See, e.g., *People* v. *Doptis* (1969) 276 Cal.App.2d 738,
742 [81 Cal.Rptr. 314]; *People* v. *Robles* (1972) 28 Cal.App.3d 739,
743 [104 Cal.Rptr. 907].)

Nevertheless, Chambers argues that the evidence *at the preliminary
hearing* was insufficient to establish probable cause she committed such
offense. The evidence at the preliminary hearing included Officer Kun-
kle's testimony as to his conversations with Chambers and the subse-
quent events at her house, but did not include the evidence which came
out at trial concerning (1) Chambers' overheard conversations with the
informant; (2) Chambers' suggestion to Zboril and Officer Kunkle on
the 24th that they use her car because the police would not bother with
it; and (3) the notation about the transaction in Chambers' phone book.

Chambers contends that notwithstanding the trial evidence, if the su-
perior court erroneously denied her motion under Penal Code section
995, the conviction must be reversed. This argument is unavailable to
appellant in light of the Supreme Court's recent decision in *People* v.
*Pompa-Ortiz* (1980) 27 Cal.3d 519, 526-530 [165 Cal.Rptr. 851, 612
P.2d 941], overruling *People* v. *Elliot* (1960) 54 Cal.2d 498 [6 Cal.
Rptr. 753, 354 P.2d 225]. Relying heavily upon Iungerich, *Reversing
Perfect Trials, California Style: Time for a Re-evaluation of the Effect*

*of Errors in Pretrial Commitment Proceedings* (1973) 48 L.A. Bar Bull. 88, the Supreme Court said that *Elliot* had misapplied the concept of "jurisdiction" and had erroneously concluded that an error by the committing magistrate deprives the superior court of jurisdiction. *Pompa-Ortiz* establishes that upon appeal from a judgment of conviction, a defendant must show that he suffered prejudice from an error by the magistrate.

■ Where, as here, the evidence produced at trial amply supports a conviction, the question whether the evidence at the preliminary hearing supported probable cause is moot. "If there is insufficient evidence to support the commitment, the defendant cannot be said to be prejudiced where sufficient evidence has been introduced at his trial to support his conviction." (Iungerich, *supra*, at p. 94.)

The judgments are affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.