[Crim. No. 4881. Fifth Dist. Feb. 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LYNN BAILES, Defendant and Appellant.

COUNSEL

David F. Blaisdell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, and Gregory W. Baugher, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KLEIN (A. E.), J.*—Appellant, Michael Lynn Bailes, appeals from a judgment rendered after a jury convicted him of burglary.

Appellant made a motion to exclude the testimony of a police officer on the ground that the prosecution had lost or destroyed photographs allegedly crucial to appellant's defense. This motion was denied. Also denied was appellant's motion to dismiss the information due to insufficient evidence.

Before trial, the court indicated that it would permit the prosecution to impeach the defendant, should he testify, with a prior felony conviction for robbery from 1976. The prosecution did not attempt to use a prior felony conviction for burglary from 1978.

FACTS

Don Beedle left his Fresno home at about 9 a.m. on July 23, 1979, to go shopping. When he returned at about 11 a.m., he noticed that several lights were on inside the home. He looked in the bedrooms and saw that they had been ransacked. The window of the master bathroom had been shattered and the screen bent to the side. The window was large enough to allow a man to enter. Beedle immediately phoned the police.

Upon further examination, Beedle noticed that a sliding glass door opening from the master bedroom onto the patio was wide open. It appeared to have been opened from the inside.

Robert Wilson, a Fresno County deputy sheriff, arrived at 11:35 a.m. He found that the burglar's point of entry had been the broken bathroom window. One side of the window screen had been pulled back.

Officer Edward Lamb, a criminalist employed by the Fresno County Sheriff's office, was summoned to the Beedle residence and arrived at

*Assigned by the Chairperson of the Judicial Council.

about noon. He dusted the bathroom window screen for fingerprints and found a partial print on the upper middle portion of the bent side of the frame. Lamb lifted the print and took it to the sheriff's office.

Lamb microscopically compared the print lifted from the window screen and a print stipulated by counsel to be appellant's right thumb print. He concluded that the print lifted from the screen was appellant's. On cross-examination, Lamb testified there is no way to ascertain whether a print has been present for a short period of time or for a year or longer.

Although Lamb had taken photographs of the entry window and screen, the photos had been missing for several months.

In his defense, appellant called as witnesses his father, mother, and brother. Before the trial began, appellant's attorney indicated that if the 1976 robbery conviction were allowed for impeachment purposes, his "inclination" would be not to allow appellant to take the stand, even though he felt appellant's explanation was important to the defense. Appellant did not testify at the trial.

Douglas Bailes, appellant's father and a plastering contractor, testified that appellant had worked for him in the past during school breaks and "quite regularly" after appellant left school. The work, at times, required removing window screens. On July 23, 1979, appellant and his brother left home at about 9 a.m. to take some debris to the dump. They returned at about 10:45 a.m.

Douglas Bailes and appellant's brother went to an electronics store at about 11 a.m.; appellant was working on his motorcycle when they left and when they returned at about noon. Mr. Bailes had never seen any of the stolen items at his home. He was not familiar with the burglarized residence and had no idea where it was located. He did not know whether he and his son had ever worked on Beedle's house.

Georgia Bailes, appellant's mother, testified she had never seen any of the allegedly stolen items in her son's room or anywhere else in her home.

Appellant's brother, Kenneth, testified he and appellant loaded the family truck and trailer and went to the dump on July 23, 1979. When they returned, they watched television for a time, then Kenneth and his

father went to the electronics store. Appellant was working on his motorcycle when they left and when they returned.

## No Hitch Error

■ As noted in the factual summary, the prosecution called Officer Edward Lamb, a criminalist from the Fresno County Sheriff's office, to testify he had lifted a latent fingerprint from the bent window screen of the burglarized residence and that the print was appellant's. Upon cross-examination, Lamb testified he had photographed the screen, the point of entry, and other parts of the victim's residence. Lamb did not book the screen itself into evidence because "as a rule" the sheriff's office does not book into evidence items from which it has lifted fingerprints and has photographed.

The photographs were not, however, available at the time of trial. Lamb testified he became aware the photos were missing in September 1979 when he was preparing to testify at appellant's preliminary hearing. Lamb unsuccessfully searched the files and evidence envelopes he had handled in which the film could have been misplaced. In the ordinary course, film would be delivered by a photo technician to the Fresno Police Department. The last time Lamb saw the film, the technician had taken it out of the sheriff's office film drawer for processing. He had not in any way contacted the Fresno Police Department about the missing film; at the close of his testimony, he apparently left to further seek the photos. The next day, the prosecution informed the court that the photographs were "not available," and that as far as he could tell they were lost.

Appellant moved to strike all of Lamb's prior testimony on the ground that the defense was denied discovery of a critical piece of evidence that was in the officer's possession. After extensive argument, the trial court acknowledged that appellant was deprived of "complete discovery" and offered to instruct the jury to disregard any reference to the precise location of appellant's thumb print on the window frame. Appellant's counsel refused such an instruction, urging that it would merely enhance the prejudice his client had suffered.

On appeal, appellant urges that the sanction suggested by the trial court was not appropriate. Appellant suggests that the appropriate sanction would be to excise all reference as to the location of the print. This argument is not persuasive.

In *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], the Supreme Court established that the state's suppression of material evidence violates due process even in the absence of a defense request for such evidence.[1] (*Id.*, at pp. 646, 649; see *People* v. *Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051].) The destruction or disposal of material evidence need not be intentional; negligent suppression of evidence is as damaging to the fairness of a defendant's trial as wilful failure to disclose such evidence. (*People* v. *Swearingen* (1978) 84 Cal.App.3d 570, 574 [148 Cal.Rptr. 755]; *People* v. *Partlow* (1978) 84 Cal.App.3d 540, 556 [148 Cal.Rptr. 744].)

Evidence is "material" in the *Hitch* sense if "there is a reasonable possibility that [it] would constitute favorable evidence on the issue of guilt or innocence." (*People* v. *Hitch, supra,* 12 Cal.3d at p. 649; *People* v. *Nation, supra,* 26 Cal.3d at p. 176.) Even if threshold materiality is apparent, a trial court need not impose sanctions unless the defendant makes a showing of *substantial* materiality. (*People* v. *Garnica* (1981) 121 Cal.App.3d 727, 733 [175 Cal.Rptr. 521]; *People* v. *Matthews* (1980) 112 Cal.App.3d 11, 22 [169 Cal.Rptr. 263]; *People* v. *Chambers* (1980) 108 Cal.App.3d 985, 989-990 [166 Cal.Rptr. 815].) For example, in *Garnica, supra,* 121 Cal.App.3d 727, the court upheld the trial court's denial of a motion to suppress the trial testimony of a witness who had submitted to a pretrial police interview. Although a tape of the interview had been lost prior to trial, the defendant "failed to show a reasonable possibility that the missing tape had a substantial materiality above and beyond" a transcript made of the interview. (*Id.,* at p. 733.)

*People* v. *Vera* (1976) 62 Cal.App.3d 293 [132 Cal.Rptr. 817], involved a defendant who was convicted of burglary, in part on the basis of fingerprints found on a deep-fat fryer within the burglarized structure. He made a trial motion to exclude results of fingerprint analysis on the ground that the police had failed to preserve the fryer itself and had not photographed the appliance while the prints were still on it. The motion was denied, and the ruling was challenged on appeal.

The court affirmed. After summarizing the nature of fingerprint evidence and the principle underlying *People* v. *Hitch, supra,* 12 Cal.3d

---

[1]Appellant made a discovery motion in late October 1979, seeking, inter alia, photographs of the crime scene. A discovery order was entered November 16, 1979. Lamb, however, testified that he first noticed the photographs were missing in September 1979, prior to appellant's preliminary hearing.

641, the court noted that appellant therein had not challenged the authenticity of the latent prints lifted from the fryer. (*Vera, supra*, 62 Cal.App.3d at p. 300.) Moreover, appellant had offered no evidence to show how his prints could have been placed on the fryer unless he had touched it. (*Id.*, at p. 301.) As such, it could not be said appellant had been deprived of material evidence or a fair trial.

In the present case, although appellant argued that the criminalist was mistaken in concluding that the latent print matched appellant's control sample, the argument was not supported by the evidence. Officer Lamb testified that 12 points of comparison were considered conclusive and he had found *23* points of comparison. Appellant also offered no evidence to show how his prints could have appeared on the window screen unless he had actually touched it. As was stated in *Vera*, appellant "merely implied that Sergeant Hensley's testimony as to where he found the latent fingerprints was a fabrication, and there is not a scintilla of evidence to support such a serious attack on the witness' credibility." (*Vera, supra*, 62 Cal.App.3d at p. 301.)

As was correctly pointed out by the trial judge, the photographs would not have changed the fact that the print was taken from the window screen; they might only show the location on the screen itself. In addition, nothing in Lamb's testimony indicated that the lost photographs would have depicted the precise location of the latent print on the screen frame. There is no evidence as to whether the photographs were taken before or after Lamb lifted the print from the screen, and Lamb never stated the distance at which the photographs were taken. Moreover, Lamb's testimony that he routinely photographed the point of entry from both outside and inside the home indicates more a desire to depict generally the window and screen at the point of entry than to pinpoint the location of the print. As such, it is most unclear what favorable evidence the photographs could have provided. Thus, appellant failed to meet the "substantial materiality" standard required by case law.

Even if appellant met the materiality requisite, the trial court duly exercised its discretion to impose a sanction tailored to assuring appellant a fair trial. In *People* v. *Zamora* (1980) 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d 1361], the Supreme Court noted three factors that guide the trial court's discretion in determining an appropriate sanction for loss or destruction of material evidence: First, the particular circumstances attending the loss or destruction. While lawful and

proper destruction requires no sanction, "illegal and malicious suppression of evidence may result in dismissal . . . ." (*Id.*, at p. 100.) Second, the materiality of the evidence suppressed. Thus, suppression of immaterial evidence requires no sanction, but "bad faith destruction of evidence which might conclusively demonstrate innocence could require dismissal. . . ." (*Ibid.*) Lastly, courts must consider the deterrent effect of the sanction upon future police conduct. Proper deterrence requires a sanction containing "a punitive element; [the sanction] must outweigh the benefit that the prosecution gains from the suppression." (*Ibid.*)

In the present case, the sanction offered by the trial court was entirely appropriate. The court, hearing appellant's argument after Officer Lamb's testimony regarding the print's location, offered to instruct the jury to disregard any testimony as to the precise location on the screen frame—the jury would be told that the print was found on the frame but would be admonished to assume no testimony had been given as to where on the frame the print had been found. Appellant refused such a limiting instruction, thus allowing Lamb's testimony to stand as given.[2]

 The lost photographs could at most have revealed the thumb print's location on the screen; they could not have undercut Lamb's testimony that he had lifted the print from the screen frame. Thus, instructing the jury that no evidence was presented as to the print's precise location on the screen dissipated any harmful impact of the lost evidence. The circumstances attending the loss indicate mere negligence: the film was apparently mislaid or misfiled while being processed. There is no evidence that the film was improperly destroyed or discarded. Moreover, as discussed previously, the materiality of the film would have been at best minimal. Finally, the interest in deterring future careless behavior was adequately served by the proposed sanction: depriving the prosecution of any evidence relating to the print's location on the screen would outweigh any benefit accruing to the pros-

---

[2]Respondent urges that appellant failed to preserve his objection when he allowed Lamb's testimony to stand as given, thus amounting to a waiver of appellant's right to assert error at the appellate level. Appellant, however, had made a motion to strike Lamb's testimony in its entirety, and thus had lodged a sufficient formal objection to that testimony. (Evid. Code, § 353, subd. (a).) Appellant's subsequent refusal to accept the middle course offered by the trial court constituted neither express withdrawal of his earlier objection nor acquiescence in admission of any of Lamb's testimony. It thus cannot be said appellant has waived his right to assert error on appeal. (Cf., *Buchanan v. Nye* (1954) 128 Cal.App.2d 582, 586-587 [275 P.2d 769].)

ecution from the photograph's absence. In sum, the trial court did not err in its handling of appellant's motion.

## No Beagle Error

■ The statutory authorization to use prior felony convictions for impeachment purposes (Evid. Code, § 788) is tempered by the trial court's discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) In *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the Supreme Court held that trial courts must consider four factors in ruling on the admissibility of a prior conviction for impeachment purposes: (1) whether the conviction reflects adversely on honesty or integrity; (2) the nearness or remoteness of the prior conviction; (3) whether the conviction is for the same or substantially similar conduct for which the accused is on trial; and (4) whether the defendant will not testify out of fear of being prejudiced by the impeachment. (*Id.*, at p. 453.) The trial court must weigh the first two factors, which demonstrate the probative value of the prior conviction, against the last two, which bear upon the potential for prejudice or confusion. (*People v. Fries* (1979) 24 Cal.3d 222, 227, 230 [155 Cal.Rptr. 194, 594 P.2d 19].)

The prior conviction in the present case was a 1976 robbery. The crime of robbery, by its own definition, involves theft and therefore reflects on the trait of honesty.[3] The fact that robbery also involves assaultive behavior does not diminish the element of theft necessary for the proof of that crime. Even though convictions for robbery and other theft offenses are "'somewhat less relevant' on the issue of credibility than are crimes such as perjury ... and hence are entitled to 'somewhat less' weight" (*Fries, supra*, 24 Cal.3d at p. 229, quoting *People v. Rollo* (1977) 20 Cal.3d 109, 118 [141 Cal.Rptr. 177, 569 P.2d 771]), no court has, as yet, refused to allow the use of a robbery prior simply because it involves assaultive behavior as well as theft. The trial judge, in this case, acknowledged that he had considered both the elements of theft and assaultive behavior in reaching his conclusion as to the first

---

[3]"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will ...." (See Pen. Code, § 211.)

prong of *Beagle*. Despite the holding in *Fries*, that robbery is entitled to less weight on the element of credibility than a crime such as perjury, it has been held that "there is no merit in the argument that a person's propensity to give false testimony may be shown *only* by instances of past lying. In many instances, actions speak louder than words." (*People* v. *Anjell* (1979) 100 Cal.App.3d 189, 197 [160 Cal.Rptr. 669].)

The second factor to be considered is the remoteness of the prior felony conviction. Appellant had been convicted of robbery in December 1976. The offense charged in this case occurred in July 1979; appellant's trial began on January 21, 1980. The prior was thus, at most, four years old, a time span which "does not point toward exclusion of the evidence." (*People* v. *Lassell* (1980) 108 Cal.App.3d 720, 725 [166 Cal.Rptr. 678] [a prior three years before the alleged offense, and four years before the trial]; *People* v. *Anjell, supra,* 100 Cal.App.3d 189, 197 [three- and six-year-old priors used]; *People* v. *James* (1978) 88 Cal.App.3d 150, 157 [151 Cal.Rptr. 354] [five-year-old prior used]; *People* v. *Boothe* (1977) 65 Cal.App.3d 685, 688 [135 Cal.Rptr. 570] [six-year-old prior used].) In addition, appellant suffered a burglary conviction in 1978, which the prosecution did not seek to use. He thus had not suffered a remote prior, "followed by a legally blameless life . . . ." (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) The second factor thus supports the probative value of the prior.

The third *Beagle* factor is whether the prior conviction is identical or substantially similar to the offense for which the accused is on trial. Appellant asserts that the crimes of robbery and burglary are so similar in the minds of the jurors that they may "feel pressure[d] to conclude that if an accused committed the prior crime he likely committed the crime charged." (*People* v. *Rist* (1976) 16 Cal.3d 211, 219 [127 Cal.Rptr. 457, 545 P.2d 833].)

It has been held that the use of *identical* priors to impeach is improper. (*People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Fries, supra,* 24 Cal.3d 222; *People* v. *Rist, supra,* 16 Cal.3d 211.) The court in *Rist* and *Fries* "found an abuse of discretion in situations in which the prior convictions were identical to the charged offenses, but as in *Rist,* the analysis in *Fries* focused on the balancing process undertaken by the lower court: . . ." (*People* v. *Lassell* (1980) 108 Cal.App.3d 720, 726 [166 Cal.Rptr. 678].) The *Spearman* case stands for the proposition that when the prior is identi-

cal to the charged offense, the court must exclude the prior conviction as a matter of law.

"Trial courts are still to exercise discretion in situations in which the prior and the charged offenses are less than identical. Several decisions avoid formulaic exclusion and follow the call in *Rist* and *Fries* for balancing." (*People* v. *Lassell, supra*, 108 Cal.App.3d 720, 727.) In *People* v. *Kyllingstad* (1978) 85 Cal.App.3d 562 [149 Cal.Rptr. 637], the defendant was charged with burglary and the trial court permitted the use of two prior burglary convictions and a conviction for receiving stolen property for impeachment purposes. On appeal, it was held to be error to permit the two burglary convictions, since they involved identical offenses. The court held, however, that the receiving stolen property offense "was not remote, was dissimilar to the offense charged, and being a larcenous crime, clearly bore upon defendant's character traits of honesty and veracity. Impeachment by that offense would have prevented defendant from presenting his testimony with 'a false aura of veracity' (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453) and would clearly have been proper under *Beagle*." (*People* v. *Kyllingstad, supra*, 85 Cal.App.3d 562, 569.) Thus, even though the burglary and receiving charges both involved theft, use of the prior receiving charge was "clearly" proper.

In *People* v. *Coleman* (1979) 89 Cal.App.3d 312 [152 Cal.Rptr. 407], defendant was charged with burglary with intent to commit rape. The trial court permitted impeachment of defendant by a prior conviction for burglary with intent to commit theft. Although the court recognized the danger in permitting the use of a prior felony conviction similar to the offense charged, the court ruled that differences in the intent of the crimes created sufficient dissimilarity to permit the use of the prior conviction. The court concluded: "Although the two offenses have the common name of 'burglary,' the differences in the *intent* making up the two offenses lead to the conclusion that the two are *not* substantially similar offenses for the purpose of the issue of the rules for exclusion of a prior felony conviction proffered to impeach a defendant as a witness. There is not a substantial likelihood that a jury would misuse the felony conviction evidence and conclude that because defendant committed a burglary with intent to commit theft at some point in the past, he therefore committed the burglary charged of an entry into the victim's home with the intent to commit rape.

"We conclude, therefore, that the trial court did not abuse its discretion under Evidence Code section 352 and the principles set forth in *Beagle* and *Rist* in permitting the prosecution to introduce evidence that defendant had previously been convicted of the felony of burglary that involved the intent to commit theft. The major consideration that leads us to this conclusion is the substantial *dissimilarity* between the two burglaries." (*Id.*, at p. 320.)

It is unclear what effect, if any, *People* v. *Spearman* has on the *Coleman* case. *Spearman* formulated the rule that *identical* priors could not be used to impeach. The *Spearman* decision did not address the issue present in *Coleman*; namely, two offenses that are identical in name ("burglary") but dissimilar in intent. It would seem that the chance for jury confusion would be greater in a case involving two crimes with the identical name rather than a situation where, as here, the prior not only had a different name but different elements.

In *People* v. *Anjell, supra*, 100 Cal.App.3d 189, defendant was charged with robbery and had suffered two prior felony convictions for grand larceny and receiving stolen property. The court indicated it would permit the prosecution to impeach defendant with the two priors. Defendant chose not to testify. Although all three offenses were larcenous, the court felt that the risk of similar priors confusing the jury was dissipated by the fact that the crime of robbery was assaultive as well as larcenous. In the present case, even though the burglary charged and the robbery prior contain similar elements, namely, theft, they also contain dissimilar factors, to wit, burglary does not involve the element of assaultive behavior.

The case of *People* v. *Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375] stands for the proposition that it was an abuse of discretion to admit into evidence prior convictions of robbery and auto theft in a trial for burglary because of the close similarity to the charged offense. (*Id.*, at p. 449.) The court in *People* v. *Lassell, supra*, 108 Cal.App.3d 720 disagreed with the holding of *Burdine*: "The court did not balance factors favoring admission against countervailing factors. *Burdine* simply precludes use of a prior conviction if it shares similar elements with the offense charged. This holding is not supported by any reasoning or authority, and is a limitation of the trial court's discretionary power going beyond the holdings of *Rist*, *Fries*, and *Spearman*. We conclude that the *Burdine* holding is unsound and should not be followed. To accept appellant's argument would be to extend unreasonably

the similarity doctrine. A requirement that in every trial for a crime involving larceny a court must exclude all prior convictions of crimes containing any element of larceny would vitiate the provisions of Evidence Code section 788, contrary to legislative intent." (*Id.*, at p. 730.)

Despite the arguable similarities between robbery and burglary, this court cannot say that the trial judge abused his discretion in permitting the use of the prior robbery conviction.[4]

The fourth *Beagle* factor involves the defendant's refusal to testify out of fear of prejudicial impeachment. Although appellant did not testify at his trial, a defense was presented by the defendant's father, brother and mother. The defense presented by the family members was one of alibi. Additionally, in an attempt to explain the presence of the fingerprint on the window screen, appellant's father testified that his son had helped in the family construction business and that part of his duties included the removal of screens from windows. Appellant's father was unaware of the location of the Beedle residence and was, therefore, unable to testify that his son worked on that specific residence when it was being built six years previous to the trial. Despite the lack of definitive evidence explaining the presence of defendant's fingerprint on the window screen, the defense did argue to the jury that it was reasonable to assume from the evidence that defendant's fingerprint had been placed on the window screen while the defendant was working on the victim's house. This theory was contradicted by the victim who had testified that he had never invited appellant into his home, did not know appellant, and could recall no reason why appellant would ever have handled the screen in question. The victim had occupied the home since its construction in 1973.

The trial court must consider the potentially "adverse effect on the administration of justice" (*People* v. *Rist, supra*, 16 Cal.3d 211, 222;

---

[4]Even if the spectrum enunciated by the dissent were accurate, and there is no reason for believing that it is, such a discussion begs the question. The trial judge is not to decide if the prior is a perfect "10" on a hypothetical scale. The trial judge must only determine if any alleged similarity between the prior and current charges is sufficient to cause the prejudice of its admission to substantially outweigh the probative value. Similar priors, although subject to greater scrutiny, do not fall under the same axiomatic category as identical priors. The blanket exclusion of robbery priors suggested by the dissent would be an unreasonable incursion into the discretionary province of the trial judge. As was stated in *Beagle*, "We do not purport to establish rigid standards to govern that which in each instance must depend upon the sound exercise of judicial discretion." (*People v. Beagle, supra*, 6 Cal.3d at p. 453.)

*People* v. *Beagle, supra*, 6 Cal.3d at p. 453) resulting from defendant's refusal to testify in order to avoid prejudicial impeachment.

Although a defendant need not make an offer of proof as to what his testimony would be if he decided to testify (*People* v. *Fries, supra*, 24 Cal.3d 222, 232-233), it has been held that the trial record must contain some evidence that the defendant's reason for not testifying was fear of prejudicial impeachment following an adverse ruling on his *Beagle* motion. (*People* v. *Burdine, supra*, 99 Cal.App.3d 442, 450.) The record is clear in the present case that the defense indicated on two occasions that if the prior conviction were permitted for impeachment purposes, appellant would not take the stand.

Once again, the trial court must weigh the probative value of the prior conviction with the possible prejudice inherent in the defendant's not testifying. As was stated in *Beagle*, "Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment." (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453.) Recognizing the possible danger of prejudice if the defendant does not testify, the court went on to say: "This last mentioned factor, we feel, calls for a word of caution. We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The *general rule* is that felony convictions bearing on veracity are admissible." (*People* v. *Beagle, supra*, 6 Cal.3d 441, 453, italics added.)

The fourth *Beagle* factor has created a great deal of difficulty for both the trial and appellate courts. It must be remembered, however, that this is simply one of four factors and is not to be considered in a vacuum. It must be balanced against the other three considerations of *Beagle*. The court in *People* v. *Anjell, supra*, 100 Cal.App.3d 189, succinctly analyzed this dilemma: "In consequence, the combination of an unsuccessful *Beagle* motion and the failure of the defendant to testify requires a reviewing court to hypothesize substantive testimony from a silent record. Appellant contends that his motion should have been granted in order to permit the jury to hear his 'version and/or explanation of his confession,' with particular reference to the Pleasant Hill

robbery. This is legitimate argument by appellate counsel, but it still invokes no more than hypothetical assessments of testimony not given. The result exemplifies the *Rist* court's observation that '[p]erhaps the most difficult to evaluate of the *Beagle* factors is the adverse effect on the administration of justice should a defendant elect not to testify for fear of impeachment.' (*People v. Rist, supra,* 16 Cal.3d 211 at p. 222.) The court followed the observation by defining the only way out of the difficulty: the requisite 'evaluation must necessarily depend in large part on the totality of other evidence bearing on the question of the defendant's guilt in the unique circumstances of the particular case.' (*Ibid.*) We follow the way.

"... We may reasonably assume (i.e., hypothesize) that appellant would have testified to his own 'version' of his alibi. His testimony was not essential to the alibi defense, of which it would have been corroborative and cumulative. The order denying his *Beagle* motion thus did not operate to impair his presentation of the defense in any respect.

" . . . . . . . . . . . . . . .

"Our recital of the hypothetical circumstances must end short of impermissible speculation by this court as to what and whom the jury might have believed. (See *People v. Spearman* (1979) 25 Cal.3d 107, 118-119 [157 Cal.Rptr. 883, 599 P.2d 74].) The totality of circumstances (both real and hypothetical) distinguish this case from each of several '*Beagle* decisions' in which the factor of the defendant's failure to testify required reversal because of its obviously prejudicial effect. In *People v. Kyllingstad* (1978) 85 Cal.App.3d 562 [149 Cal.Rptr. 637], there were time gaps in an alibi defense which could only have been explained by the defendant's testimony. (*Id.,* at p. 570.) In other cases, the respective courts were totally uninformed of defenses or defensive possibilities which might plausibly have been forthcoming if the accused had taken the stand. (E.g., *People v. Spearman, supra,* 25 Cal.3d 107 at p. 118; *People v. Fries, supra,* 24 Cal.3d 222 at p. 233; *People v. Nelson* (1976) 63 Cal.App.3d 11, 23 [133 Cal.Rptr. 552].) In contrast, appellant's alibi defense was fully presented to the jury and his own testimony was not essential to it. Any detrimental effect of his failure to testify was therefore insignificant. No abuse of discretion has been shown relative to the fourth *Beagle* factor." (*People v. Anjell, supra,* 100 Cal.App.3d 189, 197-199.)

It is incumbent upon this court to review the discretionary decision of the trial court in toto. "A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the timeliness of its ruling on the admissibility of the prior convictions." (*People v. Beagle, supra*, 6 Cal.3d 441, 454.) Before a court, in its discretion, may exclude evidence, under Evidence Code section 352, the court must conclude that "its probative value is *substantially* outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352, italics added.) It is not the duty of the appellate court to substitute its own judgment for that of the trial judge. The trial judge is required "to exercise sound discretion under Evidence Code section 352 in making a determination whether to admit or exclude the proffered felony-conviction evidence in the face of a defendant's objection based on *Beagle* and Evidence Code section 352. The real key to sound judicial discretion is that "'[it] imports the exercise of discriminating judgment within the bounds of reasons.'" (*In re Cortez* (1971) 6 Cal.3d 78, 85 . . . .)" (*People v. Coleman, supra*, 89 Cal.App.3d 312, 320.)

Despite the continuing erosion of the holding in *People v. Beagle*, the burden remains on the trial judge to exercise sound judicial discretion in arriving at an equitable decision regarding the use of prior felony convictions for impeachment. Because of the deference given to discretionary decisions, trial judges have a right to expect the appellate courts to uphold such rulings unless an abuse of discretion is clear. Except in the case of an identical prior being used to impeach, as in *People v. Spearman*, the appellate courts of this state have not changed the rules regarding the use of discretion in *Beagle* situations. Trial judges have been clearly advised to carefully exercise their discretion by the appellate courts. In exchange, they are entitled to expect the appellate courts to give appropriate respect to decisions made after the use of such discretion.[5]

---

[5]The dissent misinterprets the thrust of the majority opinion regarding use of a trial court's discretion. The continuing existence of this and other appellate courts is ample evidence of the fallibility of trial judges. This opinion does not suggest blanket approval of discretionary decisions. Even the most meticulous trial court could abuse its discretion. Whenever the weighing process has been improperly applied, this court must not hesitate in indicating its disapproval. We must not, however, inform the trial judge to perform a delicate balancing act on the high wire, and then remove the wire.

In giving careful consideration to the exercise of the trial court's discretion in this case, this court cannot say that an abuse is evident or that the trial court acted outside the bounds of reason. Accordingly, the decision to permit the use of the prior felony conviction was proper.

## SUBSTANTIAL EVIDENCE SUPPORTED THE CONVICTION

■ Appellant urges that there was insufficient evidence to support a burglary conviction. This contention is unpersuasive.

In assessing a sufficiency of evidence challenge, this court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

Appellant correctly notes that the only evidence linking him to the burglary was the presence of his thumb print on a bathroom window screen of the burglarized home. Fingerprint evidence is, however, "the strongest evidence of identity, and is ordinarily sufficient alone to identify the defendant." (*People* v. *Gardner* (1969) 71 Cal.2d 843, 849 [79 Cal.Rptr. 743, 457 P.2d 575].) Moreover, "[t]he jury is entitled to draw its own inferences as to how the defendant's prints came to be on the [object] and when . . . and to weigh the evidence and opinion of the fingerprint experts." (*Ibid.*)

Several cases have held that evidence of a fingerprint, palm print, or footprint left inside a structure or at a point of unusual access is alone sufficient to support a burglary conviction. (See *People* v. *Bright* (1967) 251 Cal.App.2d 395 [59 Cal.Rptr. 372]; *People* v. *Corral* (1964) 224 Cal.App.2d 300 [36 Cal.Rptr. 591]; *People* v. *Rodis* (1956) 145 Cal. App.2d 44 [301 P.2d 886]; and *People* v. *Amador* (1970) 8 Cal.App.3d 788 [87 Cal.Rptr. 662].) In the present case, appellant's print was found on a bathroom window screen that had been bent to allow access. The jury could reasonably infer appellant had left his print in the process of burglarizing the residence.

Viewing the evidence in the light most favorable to the judgment, substantial evidence supported the burglary conviction.

The judgment is affirmed.

Hanson (P. D.), Acting P. J., concurred.

**HANSON (P. D.), Acting P. J.,** Concurring.—The majority opinion has discussed fairly the exercise of the trial court's discretion within the *Beagle* case in ruling on the admissibility of the prior conviction. The trial judge could not, under the *Spearman* case, admit the prior burglary; however, as to the admission of the prior robbery, under the total circumstances before the judge and present case law, we cannot say that the court abused its discretion. The dissent appears to be an attack upon Evidence Code section 788 and should be directed to the Legislature rather than to the trial judge. (See *People* v. *Hickman* (1981) 127 Cal.App.3d 365, 370, 372 [179 Cal.Rptr. 541].)

**ANDREEN, J.**—I dissent from that portion of the majority opinion entitled "No Beagle Error."

Robbery, the accomplishment of theft by assault, reflects adversely against an individual's honesty and veracity to the extent it is a larcenous crime. "[A] conviction for robbery is only partly relevant to credibility . . . ." (*People* v. *Fries* (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19].) The court must weigh the credibility factor against the probability that admission of such evidence will create a "substantial danger of undue prejudice . . . ." (*Id.,* at p. 227.)

If we spread out all of the larcenous crimes in a spectrum as indicative of a propensity to lie, high on the list would be crimes of embezzlement, where the offender has violated a position of trust. (Pen. Code, §§ 503, 506.[1]) Forgery, where one passes a false document as true and genuine (§ 470), would be nearby, as would theft by false pretense. (§§ 484, 532.) Somewhere in the middle would be receiving stolen property. (§ 496.) Below that would be burglary (§ 459), which usually involves a surreptitious entry.[2] Far down on the list, perhaps

---

[1] All sectional references are to the Penal Code unless otherwise specified.

[2] The appropriate focus is on the elements of the offense itself. (*People* v. *Spearman* (1979) 25 Cal.3d 107, 114 [157 Cal.Rptr. 883, 599 P.2d 74].) Entry by stealth is not a requisite of burglary, so the normal focus is on the intent at time of entry, and if it is to commit theft, the prior may be used. Although the element of specific intent to commit theft is properly the focus on whether the prior may be used, it seems appropriate to assess the impact of stealth on a lay juror for the purpose of determining relevancy to credibility.

next to joyriding (§ 499b),[3] would be robbery, which is neither a crime of stealth nor a breach of trust. The crime of robbery is heinous, but it is more forthright and less secretive—and therefore perhaps less indicative of lack of credibility—than most other crimes of theft.

It is recognized that the above analysis has not been made before. Its validity depends upon whether the *Beagle*[4] element of whether a prior reflects adversely on the defendant's honesty or veracity should be the same in all crimes of theft, or whether the perpetration of some crimes of theft indicates a greater propensity to lie on the part of the offender than others. It is likely that no empirical data exists to prove or disprove this, but it is also true that the Legislature reported no empirical studies to validate the enactment of Evidence Code section 788, which allows use of a prior felony conviction for impeachment. (See Sen. Com. on Judiciary com., 29B West's Ann. Evid. Code (1966 ed.) § 788, p. 355.) In making this analysis, there is no suggestion that only crimes which involve a misrepresentation affect credibility. It is merely an observation that the crime of theft can be perpetrated in many ways and that some are more relevant to credibility than others. As stated in *People v. Anjell* (1979) 100 Cal.App.3d 189, 197 [160 Cal.Rptr. 669]: "the crime of robbery is assaultive as well as larcenous [citation], *and preponderantly so in the perception of lay people sitting as jurors.*" (Italics added.)

When a prior conviction is identical to the crime for which appellant is being tried, exclusion is mandated. (*People v. Fries, supra*, 24 Cal.3d 222; *People v. Spearman, supra*, 25 Cal.3d 107.) Exclusion is likewise warranted where, as here, a lay person might view the offenses as substantially similar to the offense charged, and the danger of confusion outweighs the probative value of the prior.

Often during voir dire of a jury, the question is put to the jurors as to whether they have ever been the victim of a crime. As any trial judge knows, almost invariably one or more of them report that "my house was robbed." Further questioning establishes the elements of a second degree burglary, not robbery. The practice of terming a "burglary" a "robbery" is so common that Webster's Third New International Dictionary (1961) at page 1964 gives as one of the definitions of "rob": "to remove valuables without right from (a place) [such as] a safe."

---

[3]A misdemeanor, therefore not usable.
[4]*People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

Those jurors in the instant case who equated the word "robbery" with "burglary" were prejudiced to the extent discussed in *Fries* and *Spearman*. If there were any jurors sophisticated enough to distinguish between the two crimes, they also would react with a great deal of prejudice. The crime of robbery is so foul, so fearsome, so fraught with danger that any decent law abiding juror would experience revulsion. The urge to convict irrespective of weakness of proof would be great.

As was stated in *People* v. *Rist* (1976) 16 Cal.3d 211, 222 [127 Cal.Rptr. 457, 545 P.2d 833]: "... a recent conviction of a dissimilar crime grounded on a dishonest act would add weight in favor of admissibility, but a recent conviction of a similar, assaultive crime would add weight in favor of exclusion as the prejudicial effect would therefore be even greater."

*People* v. *Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375] held that because of remoteness in time and the similarity of a prior robbery to the charged offense of burglary, evidence of a robbery offense offered for impeachment purposes "[c]learly ... should have been excluded." (*Id.*, at p. 449.) Although *Burdine* was subjected to criticism in *People* v. *Lassell* (1980) 108 Cal.App.3d 720 [166 Cal.Rptr. 678], for a failure to balance the factors favoring admission against countervailing factors, the criticism is unjustified. In *Burdine* there was no evidence of the last of the four *Beagle* factors—the effect on the administration of justice if the defendant does not testify out of fear of prejudice caused by impeachment—because there was nothing in the record to suggest that the defendant would have testified had his *Beagle* motion been granted. This was the reason for affirming the trial court. The court expressly discussed the first *Beagle* factor—whether the prior convictions reflect adversely on defendant's honesty or veracity. The second factor—remoteness—was also discussed as was the third factor—whether the prior was similar to the charged offense. In addition, the court expressly discussed weighing the factors: "In *Beagle*, the Supreme Court held that although Evidence Code section 788 authorizes the use of a prior felony conviction to impeach the credibility of a witness, a trial court must, when requested, exercise its discretion under Evidence Code section 352 and exclude this evidence if the probative value of the prior conviction *is outweighed* by other considerations, such as the risk of undue prejudice. [Citation.]" (*People* v. *Burdine, supra*, 99 Cal.App.3d at p. 448, italics added.)

The majority states "no court has, as yet, refused to allow the use of a robbery simply because it involves assaultive behavior as well as theft." *Burdine* criticized the use of a prior robbery in a burglary case. I know of no reported case since *Beagle* which holds that a robbery prior may be used for impeachment purposes. Because the probative value is so slight and the prejudice is so great, I cannot think of a fact situation in which it should be allowed. Contrary to the view in the concurring opinion, the above is not an attack on Evidence Code section 788. It is limited to a discussion of the need to use Evidence Code section 352 because the larcenous prior of robbery is so likely to be unduly prejudicial.

The evidence in the instant case was weak—a single fingerprint of uncertain age. The alibi evidence was at least believable, as was the fact that the fingerprint could have been placed on the screen innocently because of the defendant's occupation. The defendant's testimony on the latter point was crucial because the defendant's father was unacquainted with the residence and could offer no testimony as to whether the defendant had worked there. These points, in addition to the inference of guilt from a failure to testify so eloquently described in *People v. Fries, supra,* 24 Cal.3d at pages 228-229, makes the error reversible. (*People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243]; *People v. Spearman, supra,* 25 Cal.3d at pp. 118-119.)

The majority seems to take the view that the appellate court will always defer to the trial court if the prior conviction is not remote except in cases where the prior is identical to the one charged. I do not feel that the simple fact that the trial court articulated a weighing process under *Beagle* should end our inquiry. We are duty bound to determine whether the trial court decision was within the bounds of reason. I conclude it was not.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1982. Bird, C. J., Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.