Filed 10/15/13  P. v. Morgan CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056537 |
| v. | (Super.Ct.No. RIF1100023) |
| DANIEL LEE MORGAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Daniel Lee Morgan guilty of first degree burglary (Pen. Code, § 459)[1] and petty theft (§ 487, subd. (a)). Defendant subsequently admitted that he had suffered three prior prison terms within the meaning of section 667.5, subdivision (b). Defendant was sentenced to a total term of seven years in state prison. On appeal, defendant contends that: (1) there was insufficient evidence to sustain his convictions for burglary and petty theft; (2) his counsel was ineffective; and (3) the trial court imposed an unauthorized sentence for the petty theft offense. We agree with the parties that the two-year stayed sentence for petty theft was unauthorized. We reject defendant's remaining contentions.

I

FACTUAL BACKGROUND

In May 2010, Cheryl Brown-Coffman lived in a house in Moreno Valley with her 12-year-old daughter, 15-year-old son, and a roommate who was a community college student. On May 28, 2010, after locking and securing the doors to her residence, Brown-Coffman left her home at around 1:00 p.m. Her children and roommate were at school. When her daughter returned home after school, she called her mother and reported that the back door had been kicked in.

At approximately 2:30 p.m., Brown-Coffman returned home. She found her television, computer, and video game systems missing. She also noticed that the door

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

between the backyard and the garage had been forced open, and the door had been damaged.

Law enforcement discovered a palm print, visible to the naked eye, on the entertainment center in the dust near where the television had been located. Crime scene investigator Daniel Martinez photographed the print. The investigator was unable to lift the print because the print was in dust and putting powder on the dust would not lift the print. Therefore, the print was rendered as noncomparable. The investigator did not dust the doors, deadbolts, or door knobs for prints, and no DNA analysis was performed on the palm print.

Thailoi Tran, a fingerprint examiner in the CAL-ID section of the Riverside County Sheriff's Department, performed a comparison of the palm print photograph with known persons from a computer database. Tran testified that she scans the photograph and puts it into a large computer system database, and then inputs how many matches she requests from the computer. The computer then matches similar candidates with the scanned palm print photograph and issues a score from 0 to 9999 for each candidate. Defendant's palm print came back with the highest match, with a score of 4422. The other scores ranged from 980 to 671. Tran did not compare those prints because the score was not close, and when she looked at them, the palm print pattern did not look the same. In comparing defendant's palm print with the photograph of the palm print taken at the scene of the crime, Tran determined that defendant's palm print matched the palm print left on the entertainment center. Tran testified that only eight matching

3

characteristics are sufficient for identification; she found more than eight matches and, therefore, stopped counting. She explained that she stopped "counting the total number of points that match, but [she] still do[es] the comparison." Tran also concluded that there were no dissimilarities between the two prints.

Tran's findings were verified by her coworker Jayshiee Sakaria pursuant to Riverside County Sheriff's Department CAL-ID policy. Sakaria also concluded that the photograph of the palm print taken at the scene of the crime matched defendant's palm print. Both fingerprint examiners testified that each palm print is unique to one person, so once there is a match, the print cannot belong to another person. Sakaria explained that no two palm prints are alike. The fingerprint experts also explained how they evaluate the ridge characteristics, ridge flow and features on the prints.

Tran also took defendant's left thumbprint at trial, and compared it to a photograph of a left thumbprint that was admitted into evidence. Defendant's thumbprint matched the one in the photograph. Sakaria verified Tran's conclusion.

Law enforcement showed Brown-Coffman a photograph of defendant. Brown-Coffman did not know defendant and did not give him permission to enter her home or take any items.

## II

## DISCUSSION

A. *Sufficiency of the Evidence*

Defendant contends there was insufficient evidence to sustain his conviction for burglary and petty theft because the only evidence that defendant was the person who committed the crimes was the photograph of a partial palm print. We find sufficient evidence to support defendant's convictions for burglary and petty theft.

"In reviewing a criminal conviction challenged as lacking evidentiary support, 'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) We "presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*Id*. at pp. 1053-1054.)

In this case, there is no contention the home of Brown-Coffman was burglarized. Defendant's challenge here addresses his responsibility for the offense.

Critical to defendant's guilt is the physical evidence in the case. Defendant's palm print, visible to the naked eye, was found at the scene of the crime on the entertainment center in the dust near where the television had been located.

Our Supreme Court has "repeatedly emphasized that fingerprints are the strongest evidence of identity and ordinarily are sufficient by themselves to identify the perpetrator of the crime." (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1588, citing *People v. Andrews* (1989) 49 Cal.3d 200, 211; accord, *People v. Johnson* (1988) 47 Cal.3d 576, 601, overruled on another ground by *People v. Reyes* (1998) 19 Cal.4th 743, 752-754; *People v. Gardner* (1969) 71 Cal.2d 843, 849; see also *People v. Nguyen* (1994) 23 Cal.App.4th 32, 39-40; *People v. Preciado* (1991) 233 Cal.App.3d 1244, 1246.) Palm print evidence "is of equal force and sufficiency" with fingerprint evidence. (*People v. Atwood* (1963) 223 Cal.App.2d 316, 326, disapproved on another ground by *People v. Carter* (2003) 30 Cal.4th 1166, 1197.)

In *People v. Preciado*, *supra*, 233 Cal.App.3d 1244, the sole evidence against a burglary defendant was a fingerprint left on a wristwatch box. (*Id*. at p. 1246.) The victim testified that he did not know defendant, and that the box had remained in the victim's home since the victim acquired it 18 months before. (*Ibid*.) The Court of Appeal held that the fingerprint alone was sufficient to prove defendant's identity. "Preciado either touched the item during an uninvited foray [into the victim's home] or—

6

miracle of miracles—he did so some 18 months earlier, before the victim received the gift, and the fingerprints endured. . . . The determination was for the jury and was, presumably, not a very difficult one." (*Id*. at p. 1247.)

Moreover, "[s]everal cases have held that evidence of a fingerprint, palm print, or footprint left inside a structure or at a point of unusual access is alone sufficient to support a burglary conviction." (*People v. Bailes* (1982) 129 Cal.App.3d 265, 282, and cases cited therein.) In *People v. Bailes*, the Court of Appeal upheld the defendant's conviction when "the only evidence linking him to the burglary was the presence of his thumb print on a bathroom window screen of the burglarized home." (*Ibid*.)

In this case, the evidence established that defendant's palm print was found on the entertainment center in the dust near where the television had been located. Brown-Coffman testified that she did not know defendant and did not give him permission to be in her home. The fingerprint experts testified that each palm print is unique to one person, so once there is a match, the print cannot belong to another person, and that no two palm prints are alike. They explained how they evaluate the ridge characteristics, ridge flow, and features on the palm prints. The experts also explained how the crime scene photograph of the palm print was inputted into a computer database and that defendant's palm print had a high matching score. The experts concluded that it was a match and that there were no dissimilarities in the two prints.

Defendant argues that there was no corroborating evidence to show he was the perpetrator of the crime and that the conclusory opinions of the fingerprint experts was

7

"neither substantial nor of sufficient solid value" to prove he was guilty beyond a reasonable doubt. Initially, we note that it is well settled that fingerprint evidence alone may support a conviction. (*People v. Figueroa*, *supra*, 2 Cal.App.4th at p. 1588.) As such, no corroborating evidence was required.

Second, it appears defendant's argument amounts to nothing more than an attempt to attack the credibility of the fingerprint experts. However, it is the exclusive function of the trier of fact to assess the credibility of witnesses. (*People v. Alcala* (1984) 36 Cal.3d 604, 623, superseded by statute on other grounds as stated in *People v. Falsetta* (1999) 21 Cal.4th 903, 911.) We cannot substitute our evaluation of a witness' credibility for that of the fact finder. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) The fingerprint experts' opinions and procedures used were thoroughly cross-examined by defense counsel. The trier of fact was entitled to weigh the credibility of the procedures used by the fingerprint experts and the analysis performed by them. Here, the palm print was lifted from the entertainment center at the crime scene and compared to defendant's prints. The fingerprint examiners found various characteristics of similarity between defendant's known prints and the palm print recovered from the scene. The evidence was not based on a new scientific experiment or technique, but rather on the examination and analysis of physical evidence by the fingerprint examiners.

Defendant also challenges the palm print evidence on the ground, among others, that only eight characteristics of his prints matched the partial palm print on the entertainment center, whereas, a palm print may include more than 150 distinct

characteristics.  Tran testified as an expert that only eight matching characteristics are sufficient for identification; she found more than eight matches and stopped counting, and another expert had verified her results.  Again, the credibility and weight of her expert opinion were solely matters for the jury to determine.  (E.g., *People v. Flores* (2006) 144 Cal.App.4th 625, 633.)

Based on the palm print evidence and the testimonies of the fingerprint experts, "[t]he jury could reasonably infer [defendant] had left his print in the process of burglarizing the [television]."  (*People v. Bailes*, *supra*, 129 Cal.App.3d at p. 282.)  "The jury is entitled to draw its own inferences as to how the defendant's prints came to be on the [entertainment center] and when [citation] and to weigh the evidence and opinion of the fingerprint experts."  (*People v. Gardner*, *supra*, 71 Cal.2d at p. 849.)  In summary, the evidence of the palm print is substantial evidence in this case.

B.      *Ineffective Assistance of Counsel*

Defendant also contends that his attorney was ineffective for failing to fully object to and cross-examine the fingerprint experts, or to move to suppress the identification testimony, or to present an expert witness to refute the validity of the fingerprint experts' opinions.  We disagree.

A defendant claiming ineffective assistance of counsel in violation of his Sixth Amendment right to counsel must show not only that his or her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, but also that it is reasonably probable, but for counsel's failings, the result would have

9

been more favorable to the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694; *In re Jones* (1996) 13 Cal.4th 552, 561.)  "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant.  The proof . . . must be a demonstrable reality and not a speculative matter.'  [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)  There is a presumption the challenged action "'might be considered sound trial strategy'" under the circumstances.  (*Strickland*, at p. 689; accord, *People v. Dennis* (1998) 17 Cal.4th 468, 541.)  On a direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission.  (*People v. Lucas* (1995) 12 Cal.4th 415, 442.)  In other words, if the record sheds no light on why trial counsel acted or failed to act in the manner challenged, unless counsel was asked for an explanation and failed to provide one, or unless there could be no satisfactory explanation, the case is to be affirmed on appeal.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Defendant argues that, because the sole evidence connecting him to the crimes was the photograph of a partial palm print and the opinions of the fingerprint examiners, his counsel should have moved to exclude the palm print evidence and should have more thoroughly cross-examined the fingerprint experts.  He further maintains that trial counsel should have called a defense expert to explain or refute the deficiencies in the fingerprint experts' conclusions and opinions.  He believes that a defense expert was necessary to attack the reliability of fingerprint evidence, such as the methods used by the People's

10

fingerprint examiners, and to question the accuracy and findings of the People's fingerprint examiners.

The reliability of fingerprint identification has been accepted in California for over 50 years. (See, e.g., *People v. Adamson* (1946) 27 Cal.2d 478, 495, overruled on another point as stated in *In re Gaines* (1965) 63 Cal.2d 234, 238 ["Fingerprints are the strongest evidence of identity of a person"].) We cannot fault trial counsel for failing to challenge the reliability of fingerprint evidence. "Trial counsel is not required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Jones* (1979) 96 Cal.App.3d 820, 827.) "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 596.)

Assuming, however, that counsel could be faulted, defendant fails to persuade us that it is reasonably probable a motion to exclude the evidence as unreliable would have been granted. Indeed, counsel made a motion to set aside the information pursuant to section 995 based in part on the unreliability of the palm print evidence prior to, and after trial. Those motions were denied. As a result, defendant fails to establish his counsel was ineffective for failing to move to exclude or continuing to object to the palm print evidence. Since the reliability of fingerprint evidence has received the imprimatur of the California Supreme Court, any discretionary decision to address the merits of an

11

objection never raised in the trial court should be made by that court. Further, the failure to object is considered a matter of trial tactics "as to which we will not exercise judicial hindsight. [Citation.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 520.)

We also reject defendant's claim that his counsel was ineffective for failing to more fully cross-examine the fingerprint experts. An examination of the record reveals that counsel thoroughly cross-examined the fingerprint experts. Moreover, defendant does not explain how further cross-examination would have assisted in his defense.

We further reject defendant's assertion that counsel was deficient in failing to call a defense expert to refute the conclusory opinions of the People's fingerprint experts. We assume that trial counsel, a deputy public defender, was well aware of the usefulness of such testimony and evaluated whether defense expert testimony would assist or hurt defendant. The record is silent as to the reasons that trial counsel decided that expert testimony would be of no assistance to defendant in securing an acquittal. The expert testimony can be a sword, as well as a shield. On a silent record, we must assume that trial counsel contacted an expert witness and was told that expert testimony might hurt the defense. Or, counsel personally evaluated the usefulness of the expert testimony in the particular case and decided that, in balance, an expert's testimony would be of more assistance to the People than to the defense.

Furthermore, defendant has failed to show prejudice. Counsel cross-examined the People's fingerprint expert witnesses extensively as to possible errors, the reliability of using a photograph of the palm print, and the examiners' comparison of only one set from

12

the matches produced by the computer database.  Counsel also argued at length to the jury on the reliability of such evidence and the lack of corroborating evidence.

On this record, there is no evidence that trial counsel was constitutionally ineffective.

C.     *Sentencing on Petty Theft*

Defendant also contends, and the People correctly concede, that the trial court erred in sentencing him to a two-year stayed sentence for petty theft.  We also agree.

Defendant was charged in count 2 with grand theft for taking a flat screen television.  The victim testified that she bought the television for $1299 in 2006.  The jury was instructed that if it found defendant committed theft, it needed to determine whether it was grand theft (property worth more than $950) or petty theft.  Petty theft is a lesser and necessarily included offense of grand theft.  (*People v. Shoaff* (1993) 16 Cal.App.4th 1112.)  The jury found defendant guilty of the lesser included offense of petty theft.

Petty theft is punishable as a misdemeanor with a maximum penalty of six months in the county jail and/or a fine not exceeding $1,000.  (§ 490.)  The trial court, however, imposed a midterm sentence of two years, but stayed it pursuant to section 654.  This was in error.  We will therefore modify defendant's sentence for petty theft to six months, stayed pursuant to section 654.  This modification does not require resentencing because the punishment for petty theft is less than the punishment for grand theft.  (See §§ 489, subd. (b); 490.)  Accordingly, because there is nothing in the record to suggest that the

13

trial court would not have imposed the six month term and for the sake of judicial economy, it is unnecessary for the trial court to resentence defendant.

We also note that the abstract of judgment incorrectly reflects that defendant was convicted of grand theft. The trial court shall amend the abstract of judgment to reflect the correct conviction.

## III

## DISPOSITION

The judgment is modified to reflect that the sentence on count 2, petty theft, is six months, stayed pursuant to section 654. As so modified, the judgment is affirmed. The trial court is directed to amend the June 15, 2012, sentencing minute order and abstract of judgment consistent with this opinion and to send a copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                                            P. J.

We concur:

HOLLENHORST _____
                        J.

KING _____
                        J.

14