Filed 12/2/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

|  |  |
|---|---|
| THE PEOPLE, | C078933 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF122600) |
| v. |  |
| MANGAL SINGH SANGHERA, |  |
| Defendant and Appellant. |  |

APPEAL from a judgment of the Superior Court of Sutter County, Brian R. Aronson, Judge. Affirmed.

Geoffrey Rotwein, Retained Counsel for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Stephen G. Herndon, Supervising Deputy Attorney General, Darren K. Indermill and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Mangal Singh Sanghera guilty of assault with a deadly weapon, to wit, a stabbing instrument (Pen. Code, § 245, subd. (a)(1)) and found that he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)).  Defendant was sentenced to a state prison term of five years.

Defendant's sole contention on appeal is that the trial court abused its discretion by declining to exclude prior misconduct impeachment evidence under Evidence Code section 352.[1]  He further contends that the longstanding precedent requiring a defendant to testify to preserve this claim for appellate review does not apply here because he informed the trial court he would not testify if the impeachment evidence was allowed and the trial court failed to consider the impact on his decision to testify in denying his motion to exclude the evidence.  We conclude that because defendant did not testify, he has not preserved the purported error and his contention is procedurally barred from review.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2012, a fight involving numerous people broke out on the grounds of a Sikh Temple.  The combatants were using their fists, as well as sticks, brooms, shovels, and other metal objects.  After Balbir Bains stopped a man from using a metal rod to strike another person, Bains turned around and was stabbed with a knife or sharp object in the stomach.  He was taken to the hospital for treatment, and the parties stipulated that the wound constituted great bodily injury.  Bains and another witness identified defendant as Bains's assailant.

Prior to trial, defendant filed a written in limine motion in which he moved the court to preclude evidence of a 2009 misdemeanor conviction for assault by means of

---

[1]  Undesignated statutory references are to the Evidence Code in effect at the time of defendant's trial.

force likely to produce great bodily injury, as well as the underlying conduct. Defendant moved to preclude evidence of the underlying conduct pursuant to sections 1101 and 352. As for the use of the conviction for impeachment, defendant argued that the trial court must weigh the probative value of the prior conviction against its prejudicial impact and preclude the impeachment if the risk of prejudice outweighed any probative value. Citing *People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*), defendant further argued that "the court must be concerned if the fear of impeachment leads to a refusal of the defendant to testify" and that "[t]he court may decide that it is more important that the jury hear the defendant's version of events than have the prior conviction prevent him from testifying." Defendant variously asserted that the admission of his prior conviction "could" lead him not to testify and that it was "likely to prevent him from taking the stand." As a result, according to defendant, the probative value of the prior conviction for impeachment was outweighed by the prejudice that would result if he did not testify.

At the in limine hearing, the prosecutor stated he was given to understand that defendant's defense was mistaken identity, not self-defense. With that understanding, the prosecutor told the court he did not intend to introduce evidence of the misconduct underlying the conviction, but reserved the right to seek introduction of the evidence if the "door is open." At that time, no mention was made of the potential for introducing the misconduct evidence for impeachment. The trial court granted defendant's motion to preclude both the conviction and underlying misconduct "[f]or now."

In the defense case, defendant called a single eyewitness in an apparent effort to establish mistaken identity.[2] After that witness testified, an unreported discussion

---

[2] Defendant called a security guard who described the fight as involving "quite a few people sort of in a mob mentality fight." During the fight, the security guard observed the victim disarm a person who had swung a shovel at the victim. At another point, he saw the victim in a "physical altercation" with a man, but he was unsure if it was the same person who had swung the shovel at the victim. The security guard also saw

3

occurred in chambers between counsel and the trial court. Thereafter, the court stated on the record that, if defendant testified, the prosecutor wanted to impeach defendant with evidence of his conduct that led to a 2009 misdemeanor conviction for assault by means of force likely to produce great bodily injury. The prosecutor stated that witnesses would testify that defendant assaulted someone with a deadly weapon, to wit, a metal bracelet used as brass knuckles, by punching the victim multiple times in the head. The court stated that defense counsel had argued that the evidence should be excluded because it was more than five years old and the misdemeanor conviction had been expunged. The court stated that it had decided that the evidence was admissible to impeach defendant's credibility if he chose to testify.

When the trial court asked if defense counsel had anything to add, counsel told the court, "I think allowing this evidence in for impeachment directly will lead to [defendant] not testifying, and this leads to a violation of his Fifth Amendment rights and his due process rights, and I think it is also a 352 issue where, like I said, it was five years ago." Counsel further argued, "I think it would confuse the jury. There's going to be multiple witnesses testifying similar-type crime, somewhat similar individuals involved, and it was expunged. I think that . . . there's a great likelihood that the jury would use the

_____

defendant swinging aggressively at a man who was on his knees. The guard did not see a weapon in defendant's hand. The guard testified he never saw defendant and the victim in an altercation with one another during the fight. Later, the guard examined the victim's wound while they awaited emergency personnel. While the victim did not mention who had stabbed him, the victim's cousin told the guard defendant had stabbed the victim. The prosecution impeached the guard's testimony in its rebuttal case with prior statements he made to a deputy. On cross-examination, the guard denied telling a deputy he saw defendant hitting and slashing one of the first people taken to the hospital. A deputy testified that the guard told him he observed defendant hitting and slashing with an unknown object at the first person who was treated and taken away by ambulance. The parties stipulated that the first person taken away by ambulance was the victim here. On cross-examination, the guard denied telling the deputy he had seen defendant attack several people as they exited the meeting, but the deputy testified he had made that statement.

4

testimony from that prior incident in 2009 to find that [defendant] committed the assault here in this case."

The court responded, "Yes. That certainly is always a concern, but it's really a concern any time the Court allows in similar conduct evidence for the purpose of impeachment, and there is a limiting instruction that I would give to the jury, but the real world concern that you have, [defense counsel], is certainly well taken. [¶] Same thing with the chilling effect on his testimony, I do recognize that it makes it more difficult for [defendant] to make the decision whether to testify or not; but, again, that's true any time we let in any prior conduct evidence or, in some cases, even prior conviction evidence for impeachment purposes. [¶] So the Court is not swayed by the argument, although it certainly is a good argument to make. All right. So my ruling stands . . . ."

Defendant did not testify and the defense rested.

## DISCUSSION

Defendant originally contended on appeal that the trial court abused its discretion by failing to " 'determine probative value [of the impeachment evidence], appraise prejudicial effect, and weigh one against the other' " as required by section 352. Defendant argued the trial court failed to "address and rule on" the age of the incident, the jury's confusion about a crime similar to the one for which he was on trial, and the decision by defendant, rather than all criminal defendants as a group, not to testify if the evidence was ruled admissible. Defendant further asserted that the trial court's ruling was improperly based on general propositions as to what occurs in all criminal cases for all defendants where prior crime evidence is introduced instead of the aforementioned factors and their impact on defendant's personal rights in the context of the current case. Defendant contended the trial court's errors had the additional prejudicial effect of denying him a fair trial and due process.

We requested supplemental briefing on whether defendant's challenge to the trial court's ruling is barred by his failure to testify at trial. Having received and considered

the requested briefing, we conclude the answer to our query is in the affirmative. Because defendant failed to testify, he has not preserved his contention for review and his challenge is procedurally barred.

The United States Supreme Court long ago held a defendant must testify to preserve for appeal his challenge to a trial court's ruling allowing impeachment by prior convictions. (*Luce v. United States* (1984) 469 U.S. 38, 43 [83 L.Ed.2d 443, 448] (*Luce*).) In *People v. Collins* (1986) 42 Cal.3d 378 (*Collins*), our high court adopted the *Luce* procedural rule. (*Collins*, at pp. 383-388; *People v. Ledesma* (2006) 39 Cal.4th 641, 731.) And in *People v. Sims* (1993) 5 Cal.4th 405 (*Sims*), our high court extended the *Collins* rule to prior misconduct impeachment evidence. (*Sims*, at pp. 453-456.)

Defendant contends the *Collins* rule is inapplicable here. He argues that the *Collins* rationale relates to the trial court's determination of "the impact on the jury and the trial proceedings if the evidence is allowed" but not to the trial court's determination of "the impact on defendant's decision to testify." Defendant asserts that in *Luce*, *Collins*, and *Sims*, the courts were not called on to evaluate the effect allowing the impeachment evidence would have on the defendant's decision to testify. Defendant further contends that these cases are distinguishable because his attorney specifically argued in the trial court that he would not testify if the impeachment evidence was allowed, a circumstance that makes his situation "unique." Defendant also argues that it is the trial court's "role . . . to insure that defendant's constitutional rights are protected, and if the court erroneously fails to consider the effect on the defendant's decision to testify if the evidence is admitted, a constitutional violation occurs," requiring automatic reversal. Defendant contends that *Collins* applies only when a defendant does not argue in the trial court that he will not testify if the evidence is allowed. According to defendant, where the trial court fails to consider the effect of allowing the impeachment on a defendant's decision to testify, an appellate court's review requires no assessment of the evidence before the jury because the "prejudice from the error is the impact on

6

defendant's decision." Defendant also contends that to require a defendant to testify where a trial court fails to evaluate the effect of the evidence on his decision to testify "would force his election" between constitutional rights.

Defendant's arguments are unpersuasive. As we will explain, the rationale for the *Collins* rule applies fully here. To put in perspective defendant's argument about the trial court's failure to consider the effect on his decision to testify, we first discuss the genesis of this factor.

In *Beagle, supra*, 6 Cal.3d 441, our high court held that in deciding whether to allow impeachment with prior convictions, trial courts should consider, among other factors, " 'what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions.' " (*Id*. at p. 453.)[3] The *Beagle* court explained: " 'Even though a judge might find that the prior convictions are relevant

---

[3] The other *Beagle* factors are: whether the prior conviction reflects adversely on the defendant's honesty or veracity; whether the conviction is near or remote in time; and whether the prior conviction involved the same or similar conduct to the charged offense. (*Beagle*, *supra*, 6 Cal.3d at p. 453.) After the enactment of article I, section 28, subdivision (f), of the California Constitution in Proposition 8 in 1982, our high court held that to be admissible, the prior conviction must be one that reflects moral turpitude, i.e., a readiness to do evil. (*People v. Castro* (1985) 38 Cal.3d 301, 306.) Later, the court held that when the proffered impeachment evidence is misconduct other than a prior conviction, the misconduct must reflect moral turpitude. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.) After Proposition 8, our high court has continued to require consideration of the four *Beagle* factors. (*People v. Clark* (2011) 52 Cal.4th 856, 931-932 (*Clark*), citing *Wheeler*, at pp. 296-297), although the court abbreviated the fourth factor from " 'what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions' " (*Beagle*, at p. 453) to "what effect its admission would have on the defendant's decision to testify." (*Clark*, at p. 931.) Also, in addition to the *Beagle* factors, when the impeachment evidence is misconduct other than a prior conviction, courts should consider with " 'particular care' " the section 352 concerns of " 'whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' " (*Clark*, at pp. 931-932, citing *Wheeler*, at pp. 296-297.)

7

to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he [or she] may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.' " (*Ibid*.) However, the court went on to write, "This . . . factor, we feel, calls for a word of caution. We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*Ibid*.) The court then observed, " 'The defendant must weigh the danger of impeachment by the introduction of prior convictions for every witness he calls for the defense. "The fact that the witness may also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances." ' " (*Id.* at pp. 453-454.)

Against this backdrop we now discuss the rationale underlying the *Collins* rule barring appellate review unless the defendant testifies at trial. As we have said, that rationale applies here. Quoting *Luce*, *supra*, 469 U.S. at page 41, the court in *Collins* explained the rationale for the rule as follows. First, " '[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context.' [Citation.] . . . 'To perform this balancing [of weighing the probative value of the conviction against its prejudicial effect], *the court must know the precise nature of the defendant's testimony*, which is unknowable when, as here, the defendant does not testify.' " (*Collins, supra*, 42 Cal.3d at p. 384, italics added.) Second, any harm from the trial court's ruling is " 'wholly speculative' " since the trial court may change its ruling as the evidence is adduced and the prosecutor may decide not to use the prior conviction to impeach. (*Ibid*.) Third, "an appellate court cannot review that balancing process unless the record discloses '*the precise nature of the defendant's testimony*.' " (*Ibid*., italics added.) The *Collins* court noted that the Court in *Luce* rejected the idea of substituting an offer of proof for the defendant's testimony since the defendant's trial testimony could, for a number of reasons, differ from the proffer. (*Collins*, at p. 384.) Requiring that a

defendant testify " 'enable[s] the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.' " (*Id.* at pp. 384-385, citing *Luce*, at p. 42.)

We think the *Luce* rationale has even greater force given the balancing process involved under section 352.  In *Luce*, the high court was concerned with former rule 609(a) (28 U.S.C.).[4]  (*Luce, supra*, 469 U.S. at pp. 41-42.)  Under former rule 609(a), the court " 'shall' " admit a defendant's felony conviction for impeachment purposes, if the " 'probative value of admitting this evidence outweighs its prejudicial effect to the defendant.' " (*Luce*, at p. 40, fn. 1.)  Under section 352, the court "may" in its discretion exclude the evidence "if its probative value is *substantially outweighed* by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Thus, "[e]vidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)  Former rule 609(a), on the other hand did not require the probative value to be substantially outweighed by a prejudicial effect or other counterweights; rather it required

---

[4] Undesignated references to rules are to the Federal Rules of Evidence.  At the time *Luce* was decided, former rule 609(a) provided:  " 'General Rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that *the probative value of admitting this evidence outweighs its prejudicial effect to the defendant*, or (2) involved dishonesty or false statement, regardless of the punishment.' " (*Luce, supra*, 469 U.S. at p. 40, fn. 1, italics added.)

9

the probative value to outweigh the prejudicial effect.**5** Given that under section 352, the prejudicial effect or other counterweights must "substantially outweigh[]" the probative value, knowing the precise nature of the defendant's testimony is even more critical for the trial court's balancing and an appellate court's review of the trial court's exercise of discretion.

Here, absent defendant's testimony, the record is incomplete for purposes of reviewing the trial court's balancing of the probative value of the prior misconduct evidence against any prejudicial effect. Thus, any error or harm therefrom is wholly speculative. Harmless error analysis is impossible.

Moreover, we cannot be sure of defendant's reason for declining to testify. "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,' [citation], a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." (*Luce*, *supra*, 469 U.S. at p. 42.)**6** As a federal opinion cited in *Sims* noted, defense counsel's statements regarding a defendant's intent not to testify are insufficient to divine the genesis of a defendant's decision not to testify. (*Sims, supra*, 5 Cal.4th at pp. 455-456, quoting *United States v. Nivica* (1st Cir. 1989) 887 F.2d 1110, 1116-1117.)**7** Furthermore, a defendant's assertion in the trial court that

---

**5** Current rule 609 retains the same balancing analysis. (Rule 609(a)(1)(B), 28 U.S.C.)

**6** For example, we note another reason why defendant may not have testified here. If he testified, he would have been subject to cross-examination about his conduct during the melee, including whether he had attacked other people as the security guard reported to one of the responding deputies. (See fn. 2, *ante*.)

**7** We also note that trial counsel's representations to the court about whether defendant would testify here were less than unequivocal. The written in limine motion stated the admission of his prior conviction "*could*" lead defendant not to testify and that the impeachment evidence was "*likely to* prevent him from taking the stand." (Italics added.) After the chambers conference and the trial court put its ruling on the record, counsel told the court, "*I think* allowing this evidence in for impeachment directly will lead to

he will not testify if the trial court rules the impeachment evidence admissible is just one factor the court considers in the weighing process under section 352. It "is simply one of four factors and is not to be considered in a vacuum. It must be balanced against the other three considerations of *Beagle*." (*People v. Bailes* (1982) 129 Cal.App.3d 265, 279; see also *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*) [the *Beagle factors* "need not be rigidly followed"]; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 644 (*Muldrow*) [same].)

Defendant's argument that we must not apply the *Collins* rule here is grounded in part on his theory that the failure to consider the impact on a defendant's decision to testify is reversible per se. Citing *Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 331] (*Fulminante*), defendant contends the purported error affects " 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " Thus, according to defendant, the purported error is structural and therefore not amenable to a harmless error analysis. We disagree.

Any error here was one that involves state evidentiary rules, not a constitutional right. Defendant cites no case that says consideration of the fourth *Beagle* factor is constitutionally compelled and we decline to establish such a rule here.

Even assuming a federal constitutional right is implicated here, "the high court repeatedly has emphasized that most errors implicating a federal constitutional right . . . are amenable to harmless error analysis and that only a 'very limited class of cases' are subject to per se reversal." (*People v. Aranda* (2012) 55 Cal.4th 342, 363.) Most errors are trial errors "occurring 'during the presentation of the case to the jury.' [Citation.] They are amenable to harmless error review because they can be 'quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission

[defendant] not testifying." (Italics added.) At no time was there a representation defendant would testify if not impeached.

11

was harmless beyond a reasonable doubt.' " (*Ibid*.) " 'Structural defects' " are not " 'simply an error in the trial process,' but rather an error 'affecting the framework within which the trial proceeds.' " (*Id*. at pp. 363-364.) Structural errors " 'go to the very construction of the trial mechanism . . . . The *Fulminante* court described some of these errors as affecting the 'entire conduct of the trial from beginning to end . . . .' " (*People v. Anzalone* (2013) 56 Cal.4th 545, 554, citations omitted.) Examples include "constitutional violations such as the denial of counsel or of self-representation, racial discrimination in jury selection, and trial before a biased judge." (*Aranda*, at p. 364.) Such constitutional deprivations present structural defects " 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " (*People v. Allen* (2008) 44 Cal.4th 843, 871 (*Allen*).)

Defendant contends his constitutional right to testify and present a defense was violated when the trial court did not consider the impact that allowing the impeachment evidence would have on his decision to testify. Even a violation of these rights is considered trial error, not structural error. *Allen, supra*, 44 Cal.4th 843, illustrates the point. That case involved a Sexually Violent Predator Act (SVP) trial. The defendant personally asserted his right and desire to testify, but his trial counsel was opposed to him testifying for tactical reasons. The trial court informed the defendant that counsel controlled this decision and agreed it was not in the defendant's best interest to testify. For these reasons, the defendant did not testify. (*Id*. at p. 848.) Our high court held that an SVP defendant has both a federal and state due process right to testify, but the denial of that right is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]. (*Allen*, at pp. 848, 869-870.) The court held that the error was harmless. (*Id*. at pp. 849, 874.)

The *Allen* court concluded the violation of a defendant's due process right to testify was not structural. "The denial of defendant's right to testify did not affect any aspect of his trial other than his ability to present personal testimony; it was 'error which

12

occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented . . . .' [Citation.] For these reasons, the error was trial error rather than structural error." (*Allen, supra*, 44 Cal.4th at p. 871.) The *Allen* court cited several other cases in support of this conclusion. (*Ibid.*) For example, in *People v. Johnson* (1998) 62 Cal.App.4th 608, 634-636, the Court of Appeal rejected the argument that improper denial of a defendant's right to testify is structural error, and applied the *Chapman* standard.

Here, defendant was not prohibited from testifying. He was free to testify, but based on the trial court's ruling, he was subject to impeachment with the prior misconduct evidence. Assuming error, the error was a trial error and subject to harmless error review. But as *Luce* and *Collins* make clear, that review is impossible when the defendant does not testify. Consequently, the procedural bar in those cases applies, notwithstanding defendant's attempt to elevate a state law evidentiary ruling to one implicating his right to testify or present a defense.

As the *Beagle* court emphasized, no defendant "is entitled to a false aura of veracity." (*Beagle, supra*, 6 Cal.3d at p. 453.) This maxim has often been repeated. (*Clark, supra*, 52 Cal.4th at p. 932; *People v. Hinton* (2006) 37 Cal.4th 839, 888; *People v. Turner* (1994) 8 Cal.4th 137, 201; *People v. Chavez* (2000) 84 Cal.App.4th 25, 28; *Mendoza, supra*, 78 Cal.App.4th at p. 927; *Muldrow, supra*, 202 Cal.App.3d at pp. 646-647.) Not even the Constitution requires as much, and defendant's attempt to elevate the evidentiary issue here to one of constitutional dimension as an end run around the *Collins* rule must fail. "[N]o witness has the right to give testimony immune from impeachment: 'It is settled that such impeachment does not violate the due process clause of either the federal or the state Constitution [citations], or the federal privilege against self-incrimination [citation] . . . . "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." . . . "It is . . . generally

13

recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. [Citations.] . . . [I]t is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." [Citation.]' [Citation.] For these reasons, [our high court] concluded that impeachment by prior felony conviction does not violate the California privilege against self-incrimination, and held that the *Luce* rule is not inconsistent with any constitutional mandate." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1175, fn. omitted; *Collins, supra*, 42 Cal.3d at pp. 387-388.)

Echoing in the background here is the *Beagle* court's cautionary observation that the fourth factor -- the impact on the defendant's decision to testify -- was not intended to "encourage or countenance a form of blackmail by defendants." (*Beagle, supra*, 6 Cal.3d at p. 453.) We are also cognizant of the *Collins* rationale adopted from *Luce* that requiring that a defendant testify to preserve the claim of error will " 'tend to discourage making such motions solely to "plant" reversible error in the event of conviction.' " (*Collins, supra*, 42 Cal.3d at pp. 384-385, citing *Luce, supra*, 469 U.S. at p. 42.) Accordingly, we conclude that defendant's failure to testify at trial is a procedural bar to our review of his challenge to the trial court's ruling to allow the prior misconduct impeachment evidence.

## DISPOSITION

The judgment is affirmed.

                                                  _____MURRAY_____, J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.