Filed 5/18/22  P. v. Boiser CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078985 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 16CR-009210) |
| GREGORY DERRICK BOISER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John Peter Vander Feer, Judge.  Affirmed and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Robin Urbanski, Assistant Attorneys General, A. Natasha Cortina and Kelley Ann Johnson, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Gregory Derrick Boiser of second degree murder as a lesser included offense of first degree murder (Pen. Code,[1] § 187; count 1) and attempted murder (§§ 664/187; count 2). It found true allegations that in the commission of count 1, Boiser personally and intentionally discharged a firearm that caused death (§ 12022.53, subd. (d)); in the commission of count 2, he personally and intentionally discharged a firearm that caused great bodily injury (§ 12022.53, subd. (d)); and in the commission of both counts, he personally and intentionally discharged and used a firearm (§ 12022.53, subds. (b), (c)). Boiser admitted he had a 2010 serious felony conviction (§ 667, subd. (a)(1)) for assault with a deadly weapon, which also qualified as a strike (§§ 1170.12, subds. (a)-(d), 667.5, subds. (b)-(i)).

The court sentenced Boiser to a state prison term of 23 years plus 80 years to life. The 23-year determinate term consists of 18 years for the count 2 attempted murder (the upper term of nine years, doubled for Boiser's strike), plus a consecutive five-year term for the prior serious felony conviction (§ 667, subd. (a)(1)). The 80-year indeterminate term was comprised of 30 years to life for the count 1 second degree murder (15 years doubled for the strike), a consecutive term of 25 years to life for the count 1 allegation of personal discharge of a firearm causing death, and a consecutive 25-year-to-life term for the count 2 allegation of personal discharge of a firearm causing great bodily injury. The court imposed but stayed under section 654 a 20-year term for the count 1 allegation of personal discharge of a firearm, a 10-year term for the count 1 personal-use-of-a-firearm allegation, a 20-year term for the count 2 personal-discharge-of-a-firearm allegation, and a 10-year term for the count 2 personal-use-of-a-firearm allegation.

---

[1] Undesignated statutory references are to the Penal Code.

Boiser contends the trial court prejudicially abused its discretion when it ruled the People could introduce evidence of his 2010 prior conviction so as to impeach him if he testified at trial, resulting in his decision to not testify in his own defense.  He maintains the court failed to properly engage in the balancing process or fully consider applicable factors under *People v. Beagle* (1972) 6 Cal.3d 441,[2] and it relied on an improper factor—the voir dire of jurors—in admitting the evidence.  According to Boiser, the error denied him a meaningful opportunity to present a complete defense and violated his constitutional rights to due process and a fair jury trial.  He argues the error was prejudicial in part because the jury did not hear his version of events or testimony about his state of mind to support his theories of self-defense and imperfect self-defense.  Anticipating the People's argument, Boiser argues he did not forfeit the contention under the rules stated in *People v. Collins* (1986) 42 Cal.3d 378 (*Collins*) and *Luce v. United States* (1984) 469 U.S. 38 (*Luce*) by failing to testify at trial.

We disagree with Boiser's latter contention, and apply the forfeiture rule of *Luce/Collins*.  The parties provided supplemental briefs on the amendments to the determinate sentencing law, section 1170, subdivision (b), which makes the middle statutory term of imprisonment the presumptive sentence in the absence of aggravating circumstances stipulated to by the defendant or found true beyond a reasonable doubt by a trier of fact.  In light of the new law, we vacate Boiser's sentence and remand for resentencing,  We otherwise affirm the judgment.

---

[2]    Overruled on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176, 1191.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Boiser was doing maintenance work on an apartment—hanging plastic from the ceiling to the floor between the kitchen and another room where other men were playing darts. Two women were also present. Boiser asked the others to move the dart board; they complied, and he said something to the effect of: "Do you feel tension in the air? You can almost cut it with a knife." He made some jokes to the other men, but according to one of the men, they did not respond, get angry, or engage in an argument. Boiser's wife arrived and he spoke with her outside the front door, then he came back into the house carrying a shotgun and dog food bag, now wearing a full rain outfit with coat, pants, gloves and boots.

Boiser set the bag down, looked at one of the other dart players, C.W., pointed the shotgun at him and said, "I told you all I was going to kill you." C.W. replied. "Come on man, you ain't going to shoot me." Boiser asked C.W. if he thought it was a game and said, "Dare me." When C.W. rolled his eyes and said, "I dare," Boiser pressed the barrel of the shotgun up against C.W.'s chest and shot him. C.W. fell to the floor, bleeding.

Boiser blocked one of the women from running away, telling her to sit down and that he was going to kill all of them. Another man, D.P., rushed at Boiser, throwing punches and trying to get the shotgun away from him, and told everyone to run. Boiser and D.P. tussled and ended up outside, but Boiser kept control of the gun and ran away. In the meantime, another man, T.B., climbed out the bathroom window and ran toward the front yard of the house, where he encountered Boiser, who was kneeling in a "hunting position." T.B. raised his hands, but Boiser lifted the shotgun and pulled the trigger, shooting T.B. T.B. ran and collapsed under a bridge. D.P. ran to a fast food restaurant, called for paramedics and tried to get help; during that

4

time, he heard a loud gunshot. Boiser got into his truck and started to drive away, but pulled up alongside T.B., said something like, "I got you now," then drove off.

Boiser drove eastbound and eventually parked at a house on Hutchinson Street. He went to the adjacent home of M.H., who knew Boiser was a maintenance man in the neighborhood. M.H. heard Boiser say, "They killed my homey. They killed my best friend." Boiser entered a bathroom, removed his clothing and put them in a bag, telling M.H.'s wife to get rid of them. He dressed in clothes provided by M.H.'s wife. Police arrived shortly after Boiser appeared and removed everyone from the house. M.H.'s wife gave the bag of clothing to the police. Boiser surrendered to police after a standoff with a SWAT team at the house.

C.W. died at the scene. T.B.'s stomach was "essentially blown apart" and doctors estimated he lost his entire blood volume. He underwent multiple surgeries to his chest and midsection, and he requires use of a colostomy bag.[3] A criminalist found gunshot particles on Boiser's right and left hands. Police found spent and unspent shotgun shells as well as a shotgun forestock in the front yard of the apartment where C.W. was killed. Police recovered the matching shotgun from the home on Hutchinson Street where Boiser's truck was parked.

Before trial, Boiser moved to exclude for impeachment purposes his 2010 felony conviction for assault with a deadly weapon. He argued admission of the evidence would confuse the jury given its similarity to the charged offense and would affect his decision to testify in his defense. The

---

[3] At trial, T.B. admitted that he had recently been convicted of an attempted burglary and had five prior felony convictions for crimes committed in 2008, 2011, 2012, and 2014.

court ruled that the prior conviction could not be admitted during the People's case-in-chief, but if Boiser were called as a witness, the People would have to request another hearing to argue its admissibility.

Toward the close of the prosecution's case, Boiser's counsel informed the court that there was a possibility Boiser would testify. After confirming that the People in that event would ask to allow impeachment with Boiser's prior conviction, the court set the matter for a hearing to conduct an Evidence Code section 352 balancing test.

The next day, defense counsel advised the court that Boiser wanted to testify on his own behalf. The court ruled, and defense counsel submitted, that Boiser's prior felony conviction was a crime of moral turpitude. However, defense counsel argued admitting the offense would be prejudicial and could affect Boiser's decision to testify. The People argued it was important for the jury to hear about the prior conviction in deciding Boiser's veracity while on the stand.

The court stated it was "performing an on-the-record balancing test" and was "looking at multiple factors primarily under the [*People v. Beagle*, *supra*, 6 Cal.3d 441] analysis." It gave a lengthy ruling as follows:

"I would point out that when we began this case with jury selection, one of the frequent questions that was begun by the defense was that can a person convicted of a felony exercise or engage in self-defense. We spent some time, multiple panels were brought in, multiple ways [*sic*] of individuals went through the jury box, and that question was frequently asked, do you believe a convicted felon can exercise the right of self-defense legally, some jurors thought why—in fact, they were specifically asked whether a convicted felon can use a firearm to protect him or herself, and whether or not the jurors could apply the law and be fair and impartial and all that.

6

"That was brought up at the very beginning. So . . . if the People impeach Mr. Boiser with a felony conviction, I don't think it's going to come as a shock to the jurors, since [they were] questioned at length about using felonies and firearms for self-defense. The only question, at this stage of the case, the only relational evidence to those questions would be as to Mr. Boiser. So they've already been, quote, sort of pre-screened to be fair. They've indicated they could be fair and impartial. Any juror that said they couldn't was excused. Or ones that had concerns about it, there were many preemptory challenges used.

"So we have a jury that's composed of individuals that have all agreed . . . basically that a felon can use a firearm in self-defense, and so that is not going to [be] a shocking event to these jurors. They were kind of maybe hinted at by the jury questions.

"So the Court finds that the fact that Mr. Boiser, if it's shown that he admits it on the stand, is not so duly prejudicial to the jury on that issue.

"The other issue is comparatively speaking, the individuals that testified that were present at [the home where the incident occurred] are no different, have more felony convictions than Mr. Boiser. [T.B.] I think has four felony convictions, including robbery, or attempted robbery, I should say. An assault with a deadly weapon and drug charge, and a domestic violence charge. So we have an individual who is the alleged victim has four felony convictions, and recently pled to attempted robbery, a violent felony.

"So, well, let me—I forgot about [D.P.]. [D.P.] is unclear whether or not he has a felony conviction. He testifies to a number of prior instances of conduct that could be criminal in nature and talked about criminal prosecutions. So the other two individuals are present, both have testified to criminal records, [T.B.] testified to four felony convictions. And so Mr. Boiser

7

testifying, if he testifies that he has a felony conviction or admits it, it's way less than [T.B.]. And so it's not so—so for that it doesn't appear to the Court to be unduly prejudicial. [T.B.]—it is more prejudicial to [T.B.] in many respects, having four convictions.

"And the Court will note that in this case . . . the People are only seeking to admit one prior felony conviction. The Court will note that the conviction occurred in 2010. But the offense date is 2016, so although it's almost 10 years from the date—from the date of offense, it's only about six years, and the Court does not find that to be so remote from the offense that's alleged that it's unduly prejudicial to admit such a remote offense.

"The only other analysis is whether it is the same or similar conduct. Well, it's kind of interesting same or similar conduct because we don't know what the conduct is. We only know what the charge is. In this case, Mr. Boiser is charged with murder, and his prior conviction is for assault with a deadly weapon. They're not the same conduct, but they are theoretically similar that they could involve acts of violence, obviously. However, that doesn't mean it's automatically excluded.

"And that case that held that is [*People v. Dillingham* (1986) 186 Cal.App.3d 688]. So I think if there were multiple counts of assault with a deadly weapon and multiple convictions of assault with a deadly weapon the People sought to admit, and maybe criminal threats or things of that nature they sought to admit there would be a greater argument for the conduct showing the jury would somehow be convinced that he's a violent person, not to use this conviction just for determining veracity.

". . . [S]o I don't mind that it is unduly prejudicial [*sic*]. I find that the probative value outweighs any prejudicial effect. And he's not the only one testifying to have a criminal conviction. We have [T.B.] who has an assault

8

with a deadly weapon conviction. So it's not like there's a whole list of people testifying that have no criminal contact, no criminal record, and then Mr. Boiser gets up and he's the only one that has a criminal record.

"So those circumstances, after performing this balancing test, the Court finds it not to be unduly prejudicial, to be more probative than prejudicial, and I will allow the People to impeach Mr. Boiser on the witness stand if he testifies, limited to the date of conviction, the offense to which he is convicted, and the jurisdiction of the court, because it's only as to impeachable because—for veracity purposes. And that will be the court's ruling."

Following a recess, Boiser and his counsel advised the court that Boiser would not testify, and counsel asked if the court wished to inquire of him. The court responded, "As long as you two [Boiser and his counsel] have spoken, he has a right to testify, he has a right not to testify, it's completely up to him." Boiser then told the court he was declining to testify "because of the past history." The People presented a stipulation as their last piece of evidence, then rested their case.

In his defense, Boiser presented the testimony of a toxicologist who testified that testing showed C.W. had methamphetamine and cannabis in his blood.

Following a recess, the court addressed Boiser again about his decision not to testify. It explained that jury instructions were given and verdict forms prepared based on the trial evidence or absence of evidence, and it would give him additional time to discuss that matter with his counsel. The court continued: "But I do want to conclude by saying this, you have an absolute right not to testify. That's your Fifth Amendment privilege. You cannot be forced to testify. You have a right not to incriminate yourself. . . . It's your absolute constitutional right not to testify and rely on the state of

9

the evidence.  [¶]  However, if you rely on the state of the evidence, the Court's instructions will also correspond to the state of the evidence.  [¶]  But you also have a right to testify if you so choose.  I understand you may not be—you may be concerned about the Court's ruling on the prior, but that's the Court's ruling, and you can . . . talk to your attorney more about that.  So you also have the absolute right to testify.  Even disregarding the ruling I made of the—allowing you to be impeached by a prior felony conviction.  You still have an absolute right to testify.  [¶]  So it's your right to testify.  It's your right not to testify.  But I think it's prudent at this time while we set up the speaker, that you have some time to speak to your attorney about it, before a final decision is made.  Because this is near the end of your case in chief . . . ."

## DISCUSSION

### I. *Boiser Forfeited the Contention by Electing Not to Testify*

We begin and end our analysis with Boiser's contention that he should not be deemed to have forfeited review of the court's order by declining to testify.  He acknowledges that the United States Supreme Court in *Luce*, *supra*, 469 U.S. 38 held that "[t]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify" (*id.* at p. 43), and that our state's high court adopted that rule in *Collins*. (*Collins*, *supra*, 42 Cal.3d at pp. 383-388; see also *People v. Anh The Duong* (2020) 10 Cal.5th 36, 57 [acknowledging adoption]; *People v. Sims* (1993) 5 Cal.4th 405, 453-456 [reaffirming *Collins* and extending the rule to prior misconduct impeachment evidence], called into question on other grounds in *People v. Storm* (2002) 28 Cal.4th 1007, 1031-1032; *People v. Sanghera* (2016) 6 Cal.App.5th 365, 370.)

10

*Collins* explained the rationale for the rule, which is that the appellate court is " 'handicapped in any effort to rule on subtle evidentiary questions outside a factual context' " and in order to weigh the probative value of the conviction against its prejudicial effect, " 'the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.' " (*Collins*, *supra*, 42 Cal.3d at p. 384.) Further, any possible harm from a court's pretrial ruling is " 'wholly speculative,' " as the court may change its ruling as the evidence unfolds, or the People might elect not to use the conviction. (*Ibid*.) Finally, absent such a rule, almost any error would result in automatic reversal as such an error presumptively keeping the defendant from testifying could not be deemed harmless; the rule would thereby discourage motions intended to simply plant reversible error. (*Id*. at pp. 384-385.) The California Supreme Court characterizes the *Luce/Collins* rule as "well established." (*People v. Anh The Duong*, 10 Cal.5th at p. 56; *People v. Ledesma* (2006) 39 Cal.4th 641, 731.) Thus, a challenge to a request " 'to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify.' " (*Anh The Duong*, at pp. 56-57, quoting *Ledesma*, at p. 731.)

Asserting his case presents a question of first impression, and that he raises the issue to preserve it for further state and federal review, Boiser argues the *Luce/Collins* rule does not apply to him for various reasons. He first argues the rule should not apply where the court's ruling involves fundamental constitutional violations of his rights to pick an impartial jury and testify on his own behalf. There are several problems with this argument. Boiser failed to preserve any argument that the court's ruling violated his constitutional right to pick an impartial jury by not raising it below. (*People v. Young* (2019) 7 Cal.5th 905, 932 [failure to object on

11

constitutional grounds forfeits such a claim on appeal]; *People v. Flinner* (2020) 10 Cal.5th 686, 727 [defendant forfeits an argument on appeal where he does not object to the evidence in the trial court; a defendant's failure to make a " ' " 'timely and specific objection' on the ground asserted on appeal makes that ground not cognizable," ' " quoting *People v. Partida* (2005) 37 Cal.4th 428-433-434].)

Because Boiser did argue below that admitting the evidence might affect his decision to testify, it is arguable he preserved a claim of a constitutional violation of his right to testify. (See *Flinner*, at p. 726 ["a defendant does not forfeit an argument on appeal that is 'merely a constitutional "gloss" ' upon an objection properly raised below"].) Even assuming Boiser preserved these constitutional claims however, we disagree with the premise that the trial court's ruling—issued just before the close of the People's case in chief—impacted Boiser's constitutional rights to engage in voir dire, pick an impartial jury or testify. As for voir dire and picking an impartial jury, Boiser does not explain how the court's ruling on his prior conviction infringed on that right, which the record shows his counsel exercised, and we see no such infringement.

As for his right to testify or present a defense, the court's evidentiary ruling did not contravene those rights. (Accord, *People v. Turner* (2020) 10 Cal.5th 786, 818 ["As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense"]; *People v. Fayed* (2020) 9 Cal.5th 147, 190 [routine application of state evidentiary law does not implicate a defendant's constitutional rights]; *People v. Brooks* (2017) 3 Cal.5th 1, 30 [defendant's right to take the witness stand to offer his or her account of the events in question coexists with the prosecutor's right to fairly test that testimony through cross-examination].) The court in *Collins*

12

explained that a defendant making a pretrial motion to prohibit use of prior convictions really seeks the right to testify without being impeached by those convictions, but "[n]o witness . . . has the *right* to give testimony immune from such challenge. The procedure of impeaching by proof of prior felony conviction originated at common law, and has long been authorized by our Legislature . . . ." (*Collins*, *supra*, 42 Cal.3d at p. 387.)

The court's ruling in no way prevented Boiser from offering his testimony, which as we set forth above the court later emphasized he had an "absolute right" to do. (Accord, *People v. Sanghera*, *supra*, 6 Cal.App.5th at pp. 375-376 [rejecting defendant's "attempt to elevate a state law evidentiary ruling to one implicating his constitutional right to testify or present a defense"; "defendant was not prohibited from testifying [due to court's ruling admitting prior misconduct evidence if the defendant chose to testify]. He was free to testify, but based on the trial court's ruling, he was subject to impeachment with the prior misconduct evidence"].) It was Boiser's strategic decision not to testify after assessing the court's evidentiary ruling. No constitutional deprivation occurred. As a result, Boiser misplaces reliance on

13

United States Supreme Court cases that he claims address the merits of constitutional violations even when a defendant does not testify.[4]

Nor are we persuaded by Boiser's reliance on *People v. Brown* (1996) 42 Cal.App.4th 461. In *Brown*, the Court of Appeal held cognizable a

---

[4] The defendant in *Luce*, *supra*, 469 U.S. 38 cited the same two cases, the reliance on which the *Luce* court observed was "misplaced." (*Id*. at p. 42.) In *New Jersey v. Portash* (1979) 440 U.S. 450, the court held a defendant's testimony given to a grand jury in response to a grant of legislative immunity "is the essence of coerced testimony," and was therefore inadmissible for impeachment. (*Id*. at p. 459.) The court rejected the state's argument that the issue was "abstract and hypothetical" because the defendant did not testify, pointing out both the trial judge and appellate court addressed the question on the merits, and as long as there was a "case or controversy" under article III of the United States Constitution, nothing in federal law prevented consideration of the issue. (*Id*. at pp. 454-455.) Citing *Brooks v. Tennessee* (1972) 406 U.S. 605, the *Portash* court held federal law did not require defendant to take the witness stand to raise his constitutional claim. (*Id*. at p. 456.) In *Brooks v. Tennessee*, the court invalidated a statute that required a defendant to testify as the first witness during the presentation of his or her defense. (*Brooks*, 406 U.S. at p. 611.) The court reasoned that the defendant's decision was of utmost importance thus should not be made until a "full survey of all of the case" (*id*. at p. 608), and that the statute impermissibly burdened the defendant's otherwise unconditional right not to take the stand, violating the First Amendment and his right to due process. (*Id*. at pp. 611-612.) In *Brooks*, the court was not presented with the question of whether the claims were cognizable in the absence of the defendant's testimony. As *Luce* put it: "In [*Portash* and *Brooks*] we reviewed Fifth Amendment challenges to state-court rulings that operated to dissuade defendants from testifying. We did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions— such as a decision under [r]ule 609(a) [of the Federal Rules of Evidence pertaining to impeachment with prior convictions]—is reviewable on appeal." (*Luce*, at pp. 42-43.) *Luce* explained the concurring opinion in *Portash* stated the rule it adopted: " 'The preferred method for raising claims such as [petitioner's] would be for the defendant to take the stand and appeal a subsequent conviction . . . . Only in this way may the claim be presented to a reviewing court in a concrete factual context.' " (*Luce*, at p. 43, quoting *Portash*, 440 U.S. at p. 462 (conc. opn. of Powell, J.).)

defendant's claim that certain impeachment evidence (his tape-recorded interview) was obtained in violation of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel, notwithstanding his failure to testify at trial. (*Id.* at p. 471.) The *Brown* court reasoned that the need for a full factual record (see *Collins*, *supra*, 42 Cal.3d at p. 384) did not apply when the matter presented "legal issues concerning the admissibility of confessions obtained in violation of the Constitution." (*Brown*, 42 Cal.App.4th at p. 470.) *Brown* went on to distinguish the situation—as in this case—of an assertedly improperly admitted prior felony conviction: "Although a challenge to an improperly admitted prior felony conviction involves factual determinations, the trial court and the reviewing court can determine whether a constitutional violation occurred based on the evidence presented in a motion to suppress." (*Brown*, at pp. 470-471.) *Brown* does not assist Boiser (nor do the other cases he references in passing involving statements obtained in violation of a defendant's rights under *Miranda v. Arizona* (1966) 384 U.S. 436), as the impeachment evidence here was not itself obtained in violation of his constitutional rights and the court's ruling did not contravene any such fundamental rights.

Boiser next contends that the *Luce/Collins* rules should not apply where his decision not to testify explicitly rested on the court's final ruling, and the prosecution stated it intended to use his prior conviction to impeach him. He points to the discussion in *Luce* in which the court stated any "possible harm" flowing from a court's pretrial ruling permitting impeachment is "wholly speculative" because the ruling is subject to change as the case progresses, the prosecutor might elect not to use the conviction, and the reviewing court cannot assume the defendant was motivated to remain silent because of the ruling. (*Luce*, *supra*, 469 U.S. at p. 41.)

15

Boiser's argument would have us isolate this part of *Luce*'s discussion so as to distinguish it and *Collins*. We decline to do so, and hold a reviewing court's inability to rule outside a complete factual context, knowing the "precise nature of the defendant's testimony" (*Luce, supra*, 469 U.S. at p. 41) is sufficient justification to apply the forfeiture rule here. In making this argument, Boiser also disregards the remaining part of *Luce*'s opinion, in which the court continued, "*Even if these difficulties could be surmounted*, the reviewing court would still face the question of harmless error." (*Id*. at p. 42, italics added.) *Luce* explained: "Were *in limine* rulings under [r]ule 609(a) [of the Federal Rules of Evidence] reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve . . . claims [of admitting a conviction to attack a witness's character for truthfulness] will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to 'plant' reversible error in the event of conviction." (*Ibid*.)

Boiser next contends the court's ruling constitutes a structural due process defect warranting automatic reversal. We cannot agree. Even assuming a constitutional error occurred here, most such errors can be harmless. (*People v. Nieves* (2021) 11 Cal.5th 404, 461; *People v. Allen* (2008) 44 Cal.4th 843, 870 [denial of defendant's right to testify, affecting only his ability to present personal testimony, was trial error rather than structural error]; *People v. Sanghera, supra*, 6 Cal.App.5th at p. 374.) " ' "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have

16

occurred are subject to harmless-error analysis." ' " (*Nieves*, at p. 461.) Structural error is "limited to circumstances in which the error 'necessarily affected the whole framework within which the trial proceeded' or 'defies analysis for prejudice.' " (*Ibid*.; *People v. Anzalone* (2013) 56 Cal.4th 545, 554 [structural errors "go to the very construction of the trial mechanism—a biased judge, total absence of counsel, the failure of a jury to reach any verdict on an essential element"].) No such circumstances are present here. (Accord, *Sanghera*, at p. 375 [asserted violation of constitutional right to testify and present a defense due to ruling concerning impeachment evidence was not structural error but trial error subject to harmless error review].)

Alternatively, Boiser maintains harmless error review is feasible, pointing to cases in which courts have declined to follow *Luce* where the defendants made an offer of proof of their anticipated testimony so as to permit review. However, as Boiser acknowledges, he made no offer of proof here. He nevertheless urges us to depart from *Luce* and *Collins* and determine whether the trial court abused its discretion on the merits. For the reasons set forth above, we decline to do so, and apply the forfeiture rule.

## II. *Upper Term Sentence*

Boiser's sentencing hearing originally took place on December 11, 2020, but the trial court held a second hearing on December 16, 2020, to correct the sentence it had imposed. Designating count 2 as the principal term and observing there were numerous aggravating factors reflected in the probation officer's report with no mitigating factors (see California Rules of Court, rules 4.421 and 4.423), the court imposed the upper term of nine years on that count: "[T]he Court . . . has previously read and considered the probation officer's report and recommendation, and has reviewed the factors in that circumstances in aggravation, which were many, and circumstances in

17

mitigation, which were zero. So the Court is inclined to impose the aggravated term of 9 years."[5]

When the court sentenced Boiser, former section 1170 provided that the choice between lower, middle, and upper terms of imprisonment specified for an offense "shall rest within the sound discretion of the court," and that the court was to determine in its discretion which term "best serves the interests of justice." (Former § 1170, subd. (b).) In deciding the appropriate term, the court could rely on "the record in the case, the probation officer's report, other reports . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (Former § 1170, subd. (b).)

While this appeal was pending, the Governor signed Senate Bill No. 567, which amends section 1170, subdivision (b)(1) to provide that the trial court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term," except where "there are circumstances in

---

5      The probation report identified the following aggravating factors: "The crime involved great violence, great bodily harm, threat of great bodily harm, and/or [ ] other acts disclosing a high degree of cruelty, viciousness or callousness" (Cal. Rules of Court, rule 4.421(a)(1)); "The defendant was armed with or used a weapon at the time of the offense" (Cal. Rules of Court, rule 4.421(a)(2)); "The manner in which the crime was carried out indicates planning, sophistication or professionalism" (Cal. Rules of Court, rule 4.421(a)(8)); "The defendant has engaged in violent conduct that indicates a serious danger to society" (Cal. Rules of Court, rule 4.421(b)(1)); "The defendant's prior convictions as an adult, are numerous and/or of increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2)); "The defendant has served a prior prison term/s" (Cal. Rules of Court, rule 4.421(b)(3)); "The defendant was on a grant of probation when the crime was committed" (Cal. Rules of Court, rule 4.421(b)(4)); and "The defendant's prior performance on probation/parole was unsatisfactory" (Cal. Rules of Court, rule 4.421(b)(5)).

aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subds. (b)(1), (b)(2); see Stats. 2021, ch. 731, § 1.) Additionally, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3); see Stats. 2021, ch. 731, § 1.)

By Miscellaneous Order No. 021422, this court asked parties in cases "in which the judgment may be affected by one or more of the newly-enacted laws," including Senate Bill No. 567, to brief whether an appellant is entitled to relief under the new law. The parties filed supplemental briefs on the matter. Boiser asks this court to apply the law and remand for his sentence to be reduced to the presumptive midterm, or for resentencing so the court may exercise its discretion under the new law. He maintains remand would not be an " 'idle act' " because the record does not conclusively show the factors on which the trial court relied in imposing the upper term, and the court's reference to the probation report is not an adequate statement of the court's reasons for imposing the upper term. He argues the fact the amended law calls for a presumptive midterm might cause the court to impose the more lenient punishment. The People concede the amendments to section 1170 apply to Boiser, but argue remand for resentencing is unnecessary. Specifically, they argue the court relied on the aggravating factors, and any error is harmless as there is no reasonable probability a result more favorable to Boiser would occur if the matter were remanded for the court to give a more explicit statement of reasons. They point out only one

19

aggravating factor is sufficient to support an upper term and assert "it is beyond a reasonable doubt that a jury would have found true at least one, if not all, of the other aggravating factors in support of the upper term given the violent and callous nature of the offense."[6]

The amended sentencing provisions of section 1170 apply retroactively to Boiser because his conviction was not final when the law took effect. (*People v. Lopez* (2022) ___ Cal.App.5th ___, ___ [2022 WL 1467716]; *People v. Flores* (2022) 75 Cal.App.5th 495, 500, citing *People v. Garcia* (2018) 28 Cal.App.5th 961, 973.)  The statute is ameliorative because as to certain defendants it reduces the possible punishment by requiring imposition of a middle term absent aggravating circumstances that either the defendant stipulates to or are proven beyond a reasonable doubt.  (§ 1170, subd. (b)(2); see *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303; *In re Estrada* (1965) 63 Cal.2d 740, 744.)

On this record, the noncompliance with amended section 1170 in sentencing Boiser is not harmless so as to obviate a remand for resentencing. Concededly, Boiser admitted to suffering a prior conviction and his counsel stipulated to a factual basis for it.  Boiser's probation report reflects numerous convictions, as well as probation and parole violations between 1990 and 2015 before he committed the present offenses.  However, under

---

6     The People further argue that by failing to object, Boiser forfeited any argument that the trial court improperly referenced the probation report's list of aggravating factors.  But Senate Bill No. 567 had not taken effect at the time of Boiser's December 2020 sentencing, and the People give us no reason to conclude his counsel should have anticipated the change in the law. Further, as Boiser points out, "fashioning a sentence in a manner which is unauthorized by law exceeds the jurisdiction of the court and may be the subject of later review even though no objection was made in the trial court." (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311.)

amended section 1170, subdivision (b)(3), a trial court may only consider the defendant's prior convictions in determining sentencing based on a certified record of conviction. The record in this case contains no such certified records; the court referenced only the probation report and its summary of aggravating factors. And because Boiser had no opportunity to present evidence on the remaining aggravating factors, we are unable to say a trier of fact would unquestionably find the facts underlying those factors to be true. (Cf. *People v. Sandoval* (2007) 41 Cal.4th 825, 839 [in deciding whether denial of the right to a jury trial on aggravating circumstances is harmless, the court asks whether "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance"; "the reviewing court cannot necessarily assume that the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury"].) "[A]lthough [Boiser] did have an incentive and opportunity at the sentencing hearing to contest any aggravating circumstances mentioned in the probation report or in the prosecutor's statement in aggravation, that incentive and opportunity were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury." (*Ibid*.)

While many of Boiser's other aggravating factors are readily provable by official records (his probation status or performance on probation), others are subject to dispute (his convictions of "increasing seriousness" or his "planning, sophistication or professionalism"). We cannot say the record contains evidence supporting those other factors that is " ' "overwhelming and uncontested, or it is absent 'evidence that could rationally lead to a contrary finding' " ' " so as to render the failure to submit them to a jury harmless. (*People v. Lopez, supra*, ___ Cal.App.5th at p. ___ [2022 WL 1467716], quoting

21

*People v. French* (2008) 43 Cal.4th 36, 52-53.) Nor can we say which factors the People will be able to establish beyond a reasonable doubt or to which Boiser will stipulate, if any. Given the court's wholesale reliance on all of Boiser's aggravating factors, the record does not " 'clearly indicate' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Lopez, supra,* ___ Cal.App.5th at p. ___ [2022 WL 1467716]) that the trial court would have reached the same result in its sentencing decisions and imposed the upper term on count 2 based on a subset of permissible factors, (Accord, *Lopez*, at p. ___ [2022 WL 1467716].) We therefore remand for the trial court to resentence Boiser consistent with section 1170, subdivision (b).

## DISPOSITION

We vacate Boiser's sentence and remand for resentencing consistent with Penal Code section 1170, subdivision (b). Following resentencing, the court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

22